No. 80-465

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

MANUEL CASTILLO, JR., and DEBORAH J.
CASTILLO, and GARRY A. COTANT, SHARYL
COTANT,

                    Plaintiffs and Appellants,

        vs.

DELBERT B. KUNNEMANN,

                    Defendant and Respondent.

Appeal from:  District Court of the Sixth Judicial District,
              In and for the County of Park
              Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

    For Appellants:

        Berg, Coil, Stokes & Tollefsen, Bozeman, Montana
        Ben E. Berg, Jr. argued, Bozeman, Montana

    For Respondent:

        Loble and Pauly, Helena, Montana
        Lester Loble II argued, Helena, Montana
        Wellcome and Frost, Bozeman, Montana
        Al Frost argued, Bozeman, Montana
        Swandal, Douglass & Swandal, Livingston, Montana

    For Amicus Curiae:

        Donald D. MacIntyre, D.N.R., Helena, Montana

                            Submitted:  November 30, 1981

                            Decided:    MAR 3 1982

Filed: MAR 3 - 1982

Thomas J. Kearney
                                    Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Appellants, Manuel and Deborah Castillo and Garry and Sharyl Cotant, appeal from an order of the Sixth Judicial District Court, Park County, entered on October 8, 1980. The order denied appellants' request for an injunction preventing respondent, Delbert Kunnemann from diverting certain water. On September 29, 1981, this Court issued an opinion reversing the District Court, holding in favor of appellants Castillo and Cotant. A petition for rehearing was duly filed. We reverse our original position and, with modification, affirm the District Court.

In 1976, Delbert Kunnemann owned a 1,275-acre ranch located in the Shields Valley, Park County, Montana. Kunnemann owned two water rights on the Shields River from which he drew water to irrigate his ranch. Kunnemann's water rights stemmed from an appropriation of 240 miner's inches made by a Thirza Grannis on June 1, 1880, and from an appropriation of 450 miner's inches made by a John McNiven on August 14, 1893. Two main ditches, named after the respective original water rights appropriators, Grannis and McNiven, were used to transport the water from the Shields River to Kunnemann's property.

On December 30, 1976, Kunnemann sold a 230-acre parcel of his ranch to Jake Franks. The warranty deed conveying this parcel to Franks contained the following water right grant:

> "Together with 230 miner's inches of the waters of the Shields River appropriated by John McNiven and bearing appropriation date of the 14th day of August, 1893, and related ditch rights."

-2-

Jack Franks subdivided the 230-acre parcel into twelve smaller tracts of land. The Castillos purchased a 20-acre tract from Franks on March 4, 1977. The contract for deed between Franks and Castillos did not contain a specific water right grant but rather the following general grant: "Together with the tenements, hereditaments and appurtenances thereunto belonging." The Cotants purchased a 9.114-acre tract from Franks on November 8, 1979. The warranty deed given by Franks to the Cotants contained this language: "Together with all and singular the tenements, hereditaments, appurtenances, water rights and water ditches, if any, thereunto belonging."

The following diagram depicts the location of the property retained by Delbert Kunnemann, the Franks subdivision, the Castillo and Cotant properties, and the Grannis and McNiven ditches: (See Drawing on Next Page)



N

W ← → E

S

↑ Shields River

McNiven Ditch

Grannis Ditch

Kunnemann

Property

Kunnemann

Property

⌐ Water blocked

Franks

Subdivision

Castillo
Property

20 acres

Sec. 8    Sec. 9

Sec. 17    Sec. 16

Cotant
Property
9.114 acres

Kunnemann

Property

No interconnecting lateral ditches exist between the McNiven ditch and the Castillo and Cotant properties. When Jake Franks sold the subdivision tracts between the McNiven ditch and the Castillo and Cotant properties, he did not reserve any easements through which lateral ditches could be built to transport water from the McNiven ditch to the Castillo and Cotant properties.

During the 1977 and 1978 irrigating seasons, Kunnemann allowed Castillo to take water from the Grannis ditch to irrigate hay crops. In 1980, Kunnemann blocked the Grannis ditch north of the Castillo property, thus diverting all of the water flowing in the Grannis ditch onto Kunnemann's land.

As a result of Kunnemann's diversion of the Grannis ditch, Castillos and Cotants filed a complaint on July 14, 1980. They sought to enjoin Kunnemann from interfering with the flow of water in the Grannis ditch.

The District Court entered a restraining order on July 22, 1980, preventing Kunnemann from diverting the Grannis ditch water. A show cause hearing on the complaint was set for August 5, 1980.

On August 5, 1980, the plaintiffs, Castillos and Cotants, and the defendant, Kunnemann, appeared with counsel and presented testimony. Following hearing, the District Court issued findings of fact and conclusions of law on September 9, 1980.

The District Court found that the Castillos, Cotants and their predecessor in interest, Jake Franks, never had possession of the Grannis ditch or Grannis water rights. The court found that Jack Franks could not convey the Grannis

ditch or water rights as appurtenant to the Castillo or Cotant property because such rights had never been legally attached as appurtenant. The court further found that section 85-2-403, MCA, imposes no duty on the seller of real property and appurtenant water rights to file a notice of such sale or transfer with the Department of Natural Resources. Based on these findings the District Court dissolved the restraining order granted pending the order to show cause and denied the plaintiffs' motion for an injunction.

On September 18, 1980, Castillos and Cotants filed a motion to amend pursuant to Rule 59(g), M.R.Civ.P. On October 8, 1980, the District Court entered an order denying the motion. Castillos and Cotants appeal from this order.

Dispositive issues in this case are:

1. When Kunnemann deeded to Franks and expressly granted the McNiven rights, did Kunnemann impliedly reserve the Grannis rights?

2. If Kunnemann effectively reserved the Grannis rights and severed them from the land to which they had been appurtenant, did existing law require him to obtain approval of the Department of Natural Resources pursuant to the provisions of the Montana Surface and Groundwater Act, sections 85-2-101, et seq., MCA?

3. What effect does failure to apply to the Department of Natural Resources for permission to sever have upon a conveyance?

Plaintiffs introduced a decree entered by the Sixth Judicial District Court in civil case no. 2717, Henwood v. Hobson, which adjudicated water rights of Thirza Grannis on the Shields River. This decree determined that the appropriation of 240 miner's inches made by Thirza Grannis on June 1,

1880, was appurtenant to the following land: "The South half of Section Nine, also all of Section Seventeen, Township One South, Range Ten East." The tract of land which Castillo purchased from the Franks' subdivision lies in the south half of this particular section nine.

Additionally, Kunnemann testified that the land which Castillo ultimately purchased had traditionally been irrigated by water from the Grannis ditch. This testimony was confirmed by Dan Dinsdale, son of the predecessor in interest of Delbert Kunnemann, and by Albert Palmer, a hired hand who had irrigated the property. Both men stated that only water from the Grannis ditch had been used to irrigate the land which Castillo subsequently purchased.

In Lensing v. Day and Hansen Security Co. (1923), 67 Mont. 382, 384, 215 P. 999, 1000, this Court stated that ". . . a water right acquired by appropriation, and used for a beneficial and necessary purpose in connection with a given tract of land, is an appurtenance. . ." Section 70-17-101(11), MCA, establishes that ditches are an easement which may attach to land. Section 70-15-105, MCA, provides that a ". . . thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit . . ." It is clear that both by decree and beneficial use, the Grannis water and ditch rights were appurtenant to Castillo's land.

However, evidence concerning whether the Grannis water and ditch rights were appurtenant to the Cotant property is not so clear. No decree was admitted which declared such rights appurtenant to the Cotant property. Kunnemann did testify that he used the Grannis ditch and Grannis water to irrigate the lands south of the Castillo property. Cotants

-7-

purchased a 9.114-acre tract of land which borders the Castillo property immediately on the south. An aerial photo of the area showed that the Grannis ditch runs directly through the Cotant property. Due to the proximity of the Cotant property to that owned by Castillos, the evidence supports a finding that the Cotant property would have been irrigated at the same time the Castillo property was irrigated. We find the Grannis rights to be appurtenant to both tracts.

Kunnemann conveyed the McNiven water right together with related ditch rights. We hold that related ditch rights refer to the "McNiven ditch." Since Kunnemann held two water and ditch rights, namely the Grannis rights and the McNiven rights, the question becomes whether conveyance of the McNiven rights impliedly reserved the Grannis rights. We now hold that such an implied reservation was effectuated by the conveyance in question.

Section 28-3-702, MCA, provides as follows:

> "All things that in law or usage are consider-
> ed as incidental to a contract or as necessary
> to carry it into effect are implied therefrom
> unless some of them are expressly mentioned
> therein, in which case all other things of
> the same class are considered to be excluded."

Under the provisions of the above-quoted statute, the water right not specifically mentioned would be excluded. Furthermore, such an interpretation effectuates the intent of the parties. In Lensing v. Day and Hansen Security Co., supra, this court said at pp. 384-385:

> "In a conveyance of a water right or any other
> property, it is the intention of the parties,
> so far as the same has been lawfully expressed,
> which must control the courts in a construction
> of the instrument by which the property is con-
> veyed. The general rules of construction of
> legal documents apply to the instrument now
> under consideration. The fact that a water
> right is involved does not add to or in any
> way change those rules."

Applying well established rules of construction, and the provisions of section 28-3-702, MCA, quoted above, we now hold that respondent Kunnemann effectively reserved his Grannis water right and the related Grannis ditch right.

The next issue for resolution is whether the Montana Surface and Groundwater Act, sections 85-2-101, et seq., MCA, applies to water rights perfected prior to the effective date of the Act. Ditch rights are clearly not governed by the applicable statutes. The Act is comprehensive legislation designed to ". . . provide for the administration, control, and regulation of water rights and establish a system of centralized records of all water rights." Section 85-2-101(2), MCA, (emphasis added). Under this Act, an adjudication process of all water rights existing prior to July 1, 1973 was instituted. Sections 85-2-211 through 85-2-243, MCA. Additionally, appropriations of water rights after July 1, 1973 could only be made through an application and permit procedure governed by the Department of Natural Resources and Conservation. Sections 85-2-301 through 85-2-317, MCA.

Prior to 1973, Montana case law consistently held that a water right could be transferred and disposed of apart from the land to which it was appurtenant. However, such transfer could not adversely affect other vested rights. See Sherlock v. Greaves (1938), 106 Mont. 206, 76 P.2d 87; Lensing v. Day and Hansen Security Co., supra.

The Surface and Groundwater Act made such transfer subject to review as follows:

> "(3) Without obtaining prior approval from the department, an appropriator may not sever all or any part of an appropriation right from the land to which it is appurtenant, . . . The department shall approve the

> proposed change if it determines that the
> proposed change will not adversely affect
> the rights of other persons. If the depart-
> ment determines that the proposed change
> might adversely affect the rights of other
> persons, notice of the proposed change shall
> be given in accordance with 85-2-307. If
> the department then determines that an objec-
> tion filed by a person whose rights may be
> affected states a valid objection to the pro-
> posed change, the department shall hold a
> hearing thereon prior to its approval or den-
> ial of the proposed change. Objections shall
> meet the requirements of 85-2-308(2) and hear-
> ings shall be held in accordance with 85-2-309."
> Section 85-2-403, MCA. (emphasis added.)

Respondent contends that this provision was not intended to govern water rights perfected before the July 1, 1973, effective date. However, section 85-2-403(3) does not contain specific language which precludes its application to water rights perfected prior to July 1, 1973. Other provisions contained in the Surface and Groundwater Act do contain such preclusive language. For example, section 85-2-404, MCA, regarding abandonment of water rights states:

> "(1) If an appropriator ceases to use all
> or a part of his appropriation right with
> the intention of wholly or partially aban-
> doning the right or if he ceases using his
> appropriation right according to its terms
> and conditions with the intention of not
> complying with those terms and conditions,
> the appropriation right shall, to that ex-
> tent, be deemed considered abandoned and
> shall immediately expire.
>
> "(2) If an appropriator ceases to use all
> or part of his appropriation right or ceases
> using his appropriation right according to
> its terms and conditions for a period of 10
> successive years and there was water avail-
> able for his use, there shall be a prima
> facie presumption that the appropriator has
> abandoned his right in whole or for the part
> not used.
>
> "(3) This section does not apply to exist-
> ing rights until they have been determined
> in accordance with part 2 of this chapter."
> (emphasis added.)

It is clear that the legislature precluded application of the Surface and Groundwater Act statutes where it deemed

such action necessary. Accordingly, it was the legislature's apparent intent not to preclude application of section 85-2-403(3), MCA, to water rights existing prior to July 1, 1973, by virtue of the fact that language precluding such application was not included in the statute.

On rehearing, Kunnemann contends that application of section 85-2-403(3), MCA, of the Surface and Groundwater Act to water rights perfected before the Act would violate the Montana Constitution. Article IX, Section 3, provides:

> "(1) All existing rights to the use of any waters for any useful or beneficial purpose are hereby recognized and confirmed."

The subject provision of the Act does not destroy the right to use water, thus violating the constitutional provision. Rather, the Act establishes a procedure for review. The Department of Natural Resources, under the Act, can only deny transfer if other vested rights would be injured. The law has not been changed. The Department has simply been given a review to determine the same issue that could previously have been determined only by a District Court.

In commenting upon the new provision, Montana's noted water law authority, Albert Stone said:

> "The 1973 Water Use Act, R.C.M., section 89-892, continues the policy of the repealed section 89-803, only adding that any change must have the approval of the Department of Natural Resources and Conservation. So the case law developed under the prior code section should remain applicable to the new section." Selected Aspects of Montana Water Law, p. 40.

We see nothing unconstitutional about applying the mandated procedure to rights perfected prior to the effective date of the Act. Therefore, we hold that the owner of a water right existing prior to July 1, 1973, must seek the approval of the Department of Natural Resources and Conservation

before severing that right from land to which it is appurtenant.

The result of our determination involving the first two issues is, that ownership of the Grannis water right and ditch right was reserved by respondent Kunnemann. However, the water right has remained appurtenant to the land conveyed by Kunnemann to Franks and so the right reserved is qualified. Kunnemann must apply to the Department of Natural Resources for permission to sever from the land conveyed, the water right which Kunnemann owns.

The same rationale applies to the McNiven water right. The conveyance passed title, but the right to use will be delayed until appropriate approval is granted by the Department of Natural Resources.

The result of this opinion is to hold that: (1) the Montana Surface and Groundwater Act, except where it indicates a contrary intent, applies to water rights perfected prior to the effective date of the Act, and (2) failure to comply with the terms of the Act does not render a conveyance or reservation void, but suspends ability to use the right until the statutorily mandated permission is granted by the Department of Natural Resources.

Judgment in favor of Kunnemann, as modified, is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-12-

Justices John C. Sheehy and Fred J. Weber dissenting in part:

We agree with the resolution of the first issue by the majority, that Kunnemann impliedly reserved his Grannis water right and conveyed no right to Franks or his successors to take irrigation water onto the deeded lands through the Grannis ditch as it runs through the non-deeded property retained by Kunnemann.

We disagree with the conclusion of the majority that approval of the Department of Natural Resources is necessary to effectuate the transfer by Kunnemann to Franks or that any right to Kunnemann to use the remaining water is "severed" and must have Department of Natural Resources approval.

A review of basic Montana water law is useful to demonstrate our position.

We begin with a reminder that a water right and a ditch right are separate entities, capable of separate ownership. Kunnemann can own a ditch right without a water right, or a water right without a ditch right. ~~McClay~~ Maclay v. Missoula Irr. District (1931), 90 Mont. 344, _____ P.2d _____; Connolly v. Harrel (1936), 102 Mont. 295, 57 P.2d 781; McDonnell v. Huffine (1931), 44 Mont. 411, 120 P.2d 792. In this case, Kunnemann sold to Franks that part of the Grannis ditch that was part and parcel of the decided property. He reserved to himself the Grannis water right which provided water to that portion of the Grannis ditch. He had a perfect legal right to do so, since Kunnemann can own a water right without a ditch right.

Before the deed to Franks, Kunnemann, of course, owned all of the real property involved here. He owned a water right to 240 miner's inches in the Grannis ditch and 450 miner's inches in the McNiven ditch. The ditches on his

-13-

lands were part and parcel of his ownership. The ditches were not "appurtenant" because they were part of the real estate that Kunnemann owned. This was explained in Smith v. Denniff (1900), 24 Mont. 21, 23, 24,     P. as follows:

> "2.  Section 1078 of the Civil Code defines an 'appurtenance' as follows:  'A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or water course, or of a passage for light, air or heat from or across the land of another.'  A 'water course from or across the land of another' is an easement, and by reference to section 1250 of the Civil Code it is plain that in the contemplation of the Code an appurtenance to land is in any and every case an easement.  For example:  A. owns a parcel of land, to irrigate which he has  lawfully appropriated and by right is using, water.  The ditch through which the water is conveyed is also owned by him, and is partly upon his land and partly upon the land of B.  The water right is an appurtenant to A.'s land, and that part of the ditch which is upon B.'s land is an easement of A. therein, and is also appurtenant to the land of A., but that part of the ditch which is upon A.'s land is not appurtenant thereto, but is part and parcel of the land itself."

Hence, it is clear that the portion of the Grannis ditch that lies upon the lands sold to Franks is not "appurtenant" to that land, but is part and parcel of the land conveyed, Franks received no ditch right in the Grannis ditch as an "appurtenance," because Franks got no right to convey irrigation water over the remaining Kunnemann's land through the Grannis ditch on that land.  A ditch right on the land of another is an easement on the land of the other, and an easement cannot be created, granted or transferred except by operation of law, by an instrument in writing, by prescription or eminent domain.

The effect of the deed from Kunnemann to Franks was to convey to Franks 230 miner's inches of water in the McNiven ditch, and the right to take water to the deeded lands through the McNiven ditch over the remaining Kunnemann

lands. By the deed, Franks received 230 miner's inches of McNiven water formerly owned by Kunnemann, and a McNiven ditch right over the remaining Kunnemann lands as an appurtenance to the lands purchased by Franks.

Castillo and Cotant are successors to a part of the rights deeded by Kunnemann to Franks. They have no other claim upon Kunnemann, or upon his remaining water or ditch rights. They cannot get water through the Grannis ditch unless they acquire (1) a water right which can be diverted at the Grannis diversion, and (2) an easement over Kunnemann's remaining lands to carry the water through the Grannis ditch over Kunnemann's remaining lands to the lands owned by Cotant and Castillo.

A further result of the deed to Franks by Kunnemann is that Franks got that portion of the Grannis ditch which was located upon the deeded lands, but no water right because the Grannis water right was reserved to Kunnemann. When Castillo and Cotant claimed water through the Grannis ditch, they were claiming water for which neither they nor their predecessor Franks had a water right. See Maclay v. Missoula Irr. District, supra, for a reverse of this situation. Castillo and Cotant have no water right in the Grannis ditch which is appurtenant to the lands they now own.

Kunnemann owned "existing rights," that is water and ditch rights which existed prior to July 1, 1973. We disagree that the owner of an existing right may not transfer a water or ditch right unless the Department of Natural Resources approves. In arriving at the opposite conclusion, the majority rely upon a portion of section 85-2-403, MCA, which we again quote for the reader's convenience.

-15-

"(1) The right to use water under a permit or certificate of water right shall pass with a conveyance of the land or transfer by operation of law, unless specifically exempted therefrom. All transfers of interest and appropriation rights shall be without loss of priority.

"(2) The person receiving the appropriation interest shall file with the Department notice of the transfer on a form prescribed by the Department.

"(3) Without obtaining prior approval from the Department, an appropriator may not sever all or any part of an appropriation right . . ."

We contend that the foregoing statute applies only to water rights received under a permit or a certificate of authority. It was not intended to apply to existing rights, especially since existing rights were confirmed by 1972 Montana Constitution, Art. IX, § 3. The anomaly of the majority relying on section 85-2-403, MCA is that the majority hold in this case directly opposite to the provisions of section 85-2-403(1). Under that subsection no *implied* reservations are recognized. If that subsection applied Kunnemann's rights to water from the Grannis ditch would have passed by the deed to Franks because they were not "specifically exempted therefrom."

We are buttressed in our contention that section 85-2-403 does not apply to existing rights because in the same part of the code, in section 85-2-401, MCA, it is provided that priority of appropriations for existing rights are to be determined by water courts.

Prior to July 1, 1973, an owner of a water right could change the place of diversion, or place of use of his water right, except only to the extent he may injure others by such change. Section 89-803, R.C.M. 1947. These incidents of ownership of water rights were confirmed by 1972 Montana

-16-

Constitution, Art. IX, § 3, or the constitutional provision has no meaning. The majority takes away these incidents unless the Department of Natural Resources gives approval. Not only has the majority misconceived the intent of the constitutional provision and the statutes adopted thereafter, but they have placed in doubt the rights of hundreds of water users in this state who have conveyed or received conveyances of existing rights since July 1, 1973. Such a result is not necessary here, especially since the process of adjudicating all water claims is now in full swing before the water courts, when and where all rights to the use and ownership of water will be determined.

Under our view of the law here, there is no conflict with the state constitution, and we need not discuss such an issue.

We would affirm the District Court in toto.

John C. Sheehy

Justices

-17-