No. 91-009

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FILED

AUG 12 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF THE APPLICATION
FOR CHANGE OF APPROPRIATION WATER
RIGHTS NOS. 101960-41S AND 101967-41S
BY KEITH AND ALICE ROYSTON.

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

               Sarah  Arnott  Ozment  argued;  Attorney  at  Law,
               Livingston, Montana.

        For Respondent:

               James  A.  Hubble  argued;  Christensen  &  Hubble,
               Stanford,  Montana;    Donald  MacIntyre  argued;
               Attorney at Law, Helena, Montana.


                                Submitted:  June 12, 1991

                                  Decided:  August 12, 1991

Filed:

                            Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Keith and Alice Royston appeal from an order of the First Judicial District Court, Lewis and Clark County, upholding the decision of the Department of Natural Resources and Conservation (DNRC) denying the Roystons' application for a change of place of use of water rights and a change of use from flood irrigation to sprinkler irrigation. We affirm.

The Roystons raise the following issues on appeal:

(1) Did the District Court err in holding that the Roystons, as applicants for a change of appropriative water rights, had the burden of proving lack of adverse effect on other appropriators, adequate means of diversion, and beneficial use of the water?

(2) Did the District Court err in upholding the hearings examiner's refusal to hear evidence regarding the objectors' water rights?

(3) Did the District Court err in holding that the objectors had standing to object to the application based upon the prima facie content of their claims?

(4) Did the District Court err in determining that there was substantial credible evidence to support the DNRC's denial of the application for change?

(5) Are the Roystons entitled to attorney's fees pursuant to the private attorney general theory or another applicable theory?

Petitioners Keith and Alice Royston applied to the DNRC to change the place of use of their water rights and to expand the

2

number of acres irrigated. At the time of application, the Roystons had existing rights in Ross Fork Creek, a tributary of the Judith River located in Judith Basin County, Montana, pursuant to a preliminary decree entered by the Water Court on April 24, 1987. The Roystons' existing rights are to flood irrigate 32 acres with a flow rate of 750 g.p.m. (gallons per minute) and to irrigate 54 acres with a flow rate of 500 g.p.m. The application requested approval to change the place of use of their rights and increase the acreage irrigated from 86 to 266 acres.

Respondents Turner Ranch, Inc., Basin-Angus Ranch, and O'Brien, Inc. (objectors) filed objections. The objectors are all appropriators of Ross Fork Creek, junior to the Roystons, whose rights are set forth in the temporary preliminary decree. Turner Ranch is located upstream of the Roystons' point of diversion; the other objectors are located downstream. The objectors complained that the proposed expansion of irrigated acreage and change to sprinkler irrigation would result in greater depletion of Ross Fork Creek than historically has occurred, to the detriment of the junior objectors.

In September of 1988, the DNRC conducted a contested case hearing. Both parties introduced expert testimony regarding the effects the change would have on flows in Ross Fork Creek. In order to prevent the adverse effect alleged by the objectors, the applicants proposed a plan of "water banking" to store water in the subsurface soil profile by heavily irrigating the proposed places of use during periods of high water in Ross Fork Creek. During

3

other months the Roystons' proposal would limit their diversions to the flow and volume historically consumed through flood irrigation of the original places of use.

On November 15, 1989, the DNRC issued its final order denying the Roystons' application. The Roystons petitioned the District Court for judicial review. The District Court affirmed the DNRC's decision, holding that the statute relied upon by the hearings examiner places the burden of proof upon an applicant for a change of use of a water right. The Roystons appeal the decision of the District Court affirming the DNRC. The DNRC has joined the objectors as respondents on appeal.

I.

**Did the District Court err in holding that the Roystons, as applicants for a change of appropriative water rights, had the burden of proving lack of adverse effect on other appropriators, adequate means of diversion, and beneficial use of the water?**

Changes in appropriation rights are governed by § 85-2-402, MCA. The statute provides in pertinent part:

> **85-2-402.** (Temporary) **Changes in appropriation rights.** . . . (2) Except as provided in subsections (3) through (5), the department shall approve a change in appropriation right <u>if the appropriator proves</u> by substantial credible evidence that the following criteria are met:
>
> (a) The proposed use will not adversely affect the water rights of other persons or other planned uses or developments for which a permit has been issued or for which water has been reserved.
>
> (b) . . . the proposed means of diversion, construction, and operation of the appropriation works are adequate.

4

(c) The proposed use of water is a beneficial use.

. . .

Section 85-2-402(2), MCA (emphasis added). The Roystons argue that because a 1985 amendment deleted language referring to the contested case hearing stage in the application process (see § 85-2-402, MCA (1983)) the applicant's burden in the now amended statute only applies at the initial application stage and the burden is still on the objector at the hearing stage. Thus, Roystons concede that the DNRC may not summarily grant an application unless the applicant proves by substantial credible evidence that the water rights of other users will not be adversely affected. However, once objections are raised, they argue that the burden then shifts to the objectors.

We disagree. Prior to adoption of the Water Use Act of 1973 and amendment of § 85-2-402, MCA, in 1985, parties objecting to the change had the burden of demonstrating adverse impact to their water rights. See Hutchins, The Montana Law of Water Rights, pp. 75-76 (1958); Holmstrom Land Co. v. Newlan Creek Water District (1979), 185 Mont. 409, 435, 605 P.2d 1060, 1075; Hansen v. Larsen (1911), 44 Mont. 350, 353, 120 P. 229, 231; Lokowich v. City of Helena (1913), 46 Mont. 575, 577, 129 P. 1063, 1063. However, the statutory scheme set forth in the Water Use Act has re-assigned this burden. The placement of the burden on the applicant also conforms to general rules regarding burdens of proof. "The initial burden of producing evidence as to a particular fact is on the party who would be defeated if no evidence were given on either

5

side. Thereafter, the burden of producing evidence is on the party who would suffer a finding against him in the absence of further evidence." Section 26-1-401, MCA. Under the statute here, the applicant would be defeated if neither side produced evidence. Also, except as otherwise provided by law, a party has the burden of persuasion as to each fact the existence or nonexistence of which is essential to the claim for relief or defense he is asserting. Section 26-1-402, MCA. The applicant for a change of appropriation right has the burden as to the nonexistence of adverse impact. The plain language of the statute now clearly places the burden on the applicant.

The Roystons further argue that because their water rights are existing water rights recognized by the 1972 Montana Constitution, construing the statute as changing the burden of proof and placing it on the applicant is an impermissible retroactive application of a statute because it impairs vested rights acquired pursuant to the 1972 Montana Constitution. See § 85-2-102(9); Art. IX, Sec (3)(1), Mont. Const. This argument fails. A water right recognized by the 1972 Constitution does not include the right to not have to carry a burden of proof. This Court has held that the application of statutory procedures to water rights vested under the 1972 Montana Constitution is not unconstitutional. See Castillo v. Kunneman (1982), 197 Mont. 190, 642 P.2d 1019.

In Castillo, this Court considered whether the Montana Surface and Groundwater Act, §§ 85-2-101 et seq., MCA, applied to water rights perfected before the effective date of the Act. A grantor

6

of land contended that the part of the Act requiring approval from the DNRC before severing part of an appropriation right from the land was unconstitutional and should not apply to water rights perfected before the effective date of the Act. This Court noted that the Act was adopted to provide for the administration and regulation of water rights, and further noted that the particular section in question, § 85-2-403(3), MCA (deleted, sec. 16, ch. 448, L. 1983), did not "contain specific language which precludes its application to water rights perfected prior to July 1, 1973. Other provisions contained in the . . . Act do contain such preclusive language." Castillo, 642 P.2d at 1025. Similarly, the statute governing changes in appropriation rights in this case, § 85-2-402, MCA, also lacks language precluding its application to water rights perfected before July 1, 1973.

"A retroactive law is one that takes away or impairs vested rights acquired under existing laws or creates new obligations or imposes new duties in respect to transactions already past. . . . Statutes that modify the procedure for exercising a vested right or carrying out a duty do not constitute retroactive legislation." Castles v. State (1980), 187 Mont. 356, 360, 609 P.2d 1223, 1225. Section 85-2-402, MCA, merely modifies the procedure for exercising a vested right, and as such is not retroactive.

Under our standard of review of questions of law, we review an agency decision simply to determine if the agency's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (Mont. 1990), 803 P.2d 601, 603, 47 St.Rep. 2199, 2200.

7

Here, the burden of proof is controlled by the statute, which clearly places the burden on the applicant. The District Court did not err in upholding the DNRC's interpretation of the statute.

II.

**Did the District Court err in upholding the hearings examiner's refusal to hear evidence regarding the objectors' water rights?**

The Roystons contend that because they were precluded from showing the nature of the objectors' rights they were unable to demonstrate that the objectors' rights would be unaffected by the Roystons' change in place of use and change from flood to sprinkler irrigation. The Roystons contend that by failing to take evidence on these rights, it was impossible for the DNRC to properly assess adverse impact on those water rights according to the statute, and thus the Roystons were denied due process.

This argument fails. The DNRC gave its reasoning for not accepting evidence of the objectors' water rights:

> Mistaken nonrecognition of an objector's right, and grant of a change authorization based thereon, could irreparably damage objector; while mistaken recognition of that objector's right and denial of a change authorization would maintain the status quo with no actual loss to anyone.

The records of the objectors' water rights are set forth in the Water Court's temporary preliminary decree. The hearings examiner correctly concluded that the rights set forth in the decree were prima facie evidence that the objectors have water rights in the appropriated stream. See § 85-2-227, MCA. The legislature provided a separate procedure in the Water Use Act by which the

8

Roystons could make a timely objection to the rights claimed by the objectors in Ross Fork Creek, when such rights were adjudicated by the Water Court and set forth in the temporary preliminary decree for that basin. See generally Title 85, Chapter 2, Part 2, Montana Code Annotated. To allow the Roystons to present evidence of the objectors' water rights could essentially lead to the re-adjudication of water rights claimed in Ross Fork Creek. The District Court did not err in upholding the hearings examiner's decision to use the temporary preliminary decree as prima facie evidence of the objectors' water rights rather than to allow the Roystons to present evidence of the objectors' water rights.

## III.

**Did the District Court err in holding that the objectors had standing to object to the application based upon the prima facie content of their claims?**

The Roystons argue that two of the objectors, Turner Ranch and Basin-Angus Ranch, did not have standing to object to the Roystons' application to change their senior water right. They contend that Turner lacks standing because only downstream appropriators whose rights are hydrologically connected to the applicant's right have standing to object to a change.

This contention lacks merit. Generally, an appropriator with a water right in a particular source has an obvious interest in any water right granted from that source and thus has standing to challenge any water right granted in that source. Holmstrom Land Co. v. Newlan Creek Water District (1979), 185 Mont. 409, 425, 605

9

P.2d 1060, 1069. An upstream junior appropriator can be damaged by a change in the amount of water appropriated downstream if a shortage ensues and a senior appropriator causes the junior to forego his water until the senior's rights are fulfilled. Thus, Turner ranch as an upstream junior appropriator has an obvious interest in any right granted in Ross Fork Creek. See, e.g., Holmstrom, supra. Basin-Angus also has an interest in any water appropriated in Ross Fork Creek as a downstream junior appropriator.

The Roystons also argue that the issue of standing should have been certified to District Court. The Roystons do not argue that objector O'Brien did not have standing to object under the statute. Since the Roystons did not challenge O'Brien, Inc.'s standing to object, any alleged error in allowing Basin-Angus Ranch and Turner Ranch to proceed in the same hearing using the same counsel, or refusing to certify the issue of standing to district court, is rendered harmless. The objection of O'Brien alone was sufficient to cause the matter to go to hearing. A reviewing court is precluded from modifying or reversing an agency's decision unless substantial rights of the appellant have been prejudiced. Section 2-4-704(2), MCA. The Roystons suffered no prejudice because Basin-Angus and Turner were parties to the hearing.

IV.

**Did the District Court err in determining that there was substantial credible evidence to support the DNRC's denial of the application for change?**

10

The Roystons argue that the record lacks substantial credible evidence to support the hearings examiner's decision. They contend that without evidence of the objectors' water rights and their hydrologic relation to the Roystons' rights, there is no substantial evidence of adverse impact controverting their evidence. The Roystons contend that the record indicates that their new sprinkler system would not divert any more water than what was historically consumed through flood irrigation. They further argue that while the District Court noted that there was no testimony regarding whether the sprinkler system could operate at decreased flows, there is no evidence in the record that the proposed sprinkler system would not work. They contend that the objectors' expert in fact stated that the system could be operated at lower flows during periods of shortage and, therefore, that the record does not support the conclusion that their appropriation works were inadequate.

The Roystons introduced evidence of their water "banking" plan through the testimony of an expert witness. The objectors' expert testified that water "banking" may lead to wide-spread wilting of plants in areas previously saturated because there is a dense stand of plants competing for a very small amount of water. The expert also testified that water "banking" may be harmful to the land.

The record indicates that high water periods occur yearly in Ross Fork Creek and are of variable, but generally short, duration. The record does not show the relative percentages of water,

11

historically diverted but unconsumed, that evaporated, returned to Ross Fork Creek, or were lost to the creek through deep percolation or otherwise. The hearings examiner did find that due to the proximity to the creek of the acreage originally irrigated, most of the unconsumed water would have quickly returned to the creek, either on the surface or via subsurface routes under the original system of flood irrigation. The record indicates that because of the increased distance of the new places of use to the creek under the proposed sprinkler irrigation system that there would be significantly less immediate return flow to Ross Fork Creek. The record does not indicate how much immediate or delayed return flow would occur under the proposed system.

Regarding the adequacy of the Roystons' proposed means of diversion, the hearings examiner found that the record did not indicate how the proposed sprinkler system could be operated at design flow rates during high water and then be modified or "nozzled down" to operate with substantially less flow later in the season. The hearings examiner further noted as a "recognized technical fact" that there is a minimum flow below which water cannot be effectively applied even with such adjustments and that such threshold flows were not of record nor could they be determined from the record.

Judicial review of an agency's decision is governed by the Montana Administrative Procedure Act (MAPA), § 2-4-704, MCA. Under MAPA our review of an agency decision is narrowly defined:

> The court may not substitute its judgement for that of the agency as to the weight of the evidence on questions

12

of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:

(a) the administrative findings, inferences, conclusions, or decisions are:

(i) in violation of constitutional or statutory provisions;

(ii) in excess of the statutory authority of the agency;

(iii) made upon unlawful procedure;

(iv) affected by other error of law;

(v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(b) findings of fact, upon issues essential to the decision, were not made although requested.

Section 2-4-704(2), MCA. The Roystons are essentially asking this Court to reweigh the evidence. The Roystons had the burden of demonstrating that granting their application would not adversely affect the rights of the objectors. The Roystons failed to meet their burden. The application was properly denied because the evidence in the record does not sustain a conclusion of no adverse affect to others and it cannot be concluded from the record that the means of diversion and operation of the appropriation works are adequate. The DNRC's decision was not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

13

V.

**Are the Roystons entitled to attorney's fees pursuant to the private attorney general theory or another applicable theory?**

Because we have affirmed the DNRC's decision in all respects, we need not reach this issue.

The order of the District Court is

**AFFIRMED.**

/s/ B. C. McDonough
_____
Justice

We concur:

/s/ J. A. Turnage
_____
Chief Justice

/s/ John Conway Harrison

/s/ Karla M. Gray

/s/ Terry Trieweiler

/s/ William E. Hunt, Sr.

/s/ _____
_____
Justices

14

August 12, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Sarah Arnott Ozment
Attorney at Law
P.O. Box 1160
Livingston, MT 59047

James A. Hubble
Christensen & Hubble
P.O. Box 556
Stanford, MT 59479

Donald MacIntyre
Dept. of Natural Resources
1520 E. Sixth Ave.
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy