RUSSELL HAUGEN and
DONN R. HAUGEN,
Plaintiffs and Appellants,
v.
BLAINE BANK OF MONTANA,
a Montana Corporation,
WILLIAM LARSEN, GLENN
HUESTIS, JOHN DOE 1
and JOHN DOE 2,
Defendants and Respondents.


No. 95-554.

Submitted on Briefs March 28, 1996.

Rehearing Denied December 9, 1996.

Decided October 24, 1996.

Appeal from the District Court of Blaine County.

Seventeenth Judicial District.

Honorable John C. McKeon, Judge.See C.J.S. Dismissal and Nonsuit Sec. 62.

Affirmed.

JUSTICE NELSON specially concurs, joined by JUSTICE GRAY.

JUSTICE LEAPHART dissenting, joined by JUSTICES TRIEWEILER and HUNT.

JUSTICE TRIEWEILER dissenting, joined by JUSTICE HUNT.

JUSTICE HUNT dissenting, joined by JUSTICES TRIEWEILER and LEAPHART.

For Appellant: Thomas S. Winsor, Winsor Law Firm, Helena.

For Respondent: Ward E. Taleff, Alexander, Baucus, Taleff & Paul, Great Falls; Mark Harshman, Blaine County Attorney, Chinook.

JUSTICE NELSON delivered the Opinion of the Court.

Plaintiffs Russell and Donn R. Haugen appeal an order of the District Court for the Seventeenth Judicial District, Blaine County, dismissing their claim for failing to meet the requirements of Rule 41(e), M.R.Civ.P. We affirm.

We address the following issues on appeal:

1. Did the District Court err in determining that Plaintiffs failed to meet the requirements of Rule 41(e), M.R.Civ.P., thereby requiring dismissal of their claim?

2. Did Plaintiffs file their Notice of Appeal in a timely manner?

Factual and Procedural Background

Plaintiffs filed their complaint on August 28, 1992, seeking damages for an alleged unlawful sale of personal property in connection with a sheriff's sale. The sale was held pursuant to a judgment obtained by Blaine Bank of Montana (Blaine Bank) against Plaintiffs. The Clerk of the District Court of Blaine County issued a summons for each Defendant on July 23, 1993, but the summonses were never served.

On September 21, 1994, the clerk of court sent a letter to Plaintiffs' attorney advising him that the case remained open and requesting that some action be taken, if possible, to move the case closer to conclusion. On April 7, 1995, Plaintiffs' attorney filed a report with the District Court stating Plaintiffs' intention to activate the file and proceed with their claim. On July 3, 1995, Plaintiffs filed a notice advising the court that their previous counsel had withdrawn and new counsel had been substituted.

Defendants William Larsen and Blaine Bank prepared a Motion to Dismiss for Failure to Prosecute in anticipation of Plaintiffs not perfecting service within three years of filing the complaint. The motion was mistakenly filed on August 24, 1995, a few days prior to the expiration of the three-year period.

At Plaintiffs' request, the clerk of court issued amended summonses on August 23, 1995. The Blaine County Sheriff's Office served the complaint and summonses upon Defendants Larsen and Blaine Bank on August 25, 1995, and upon Defendant Glenn Huestis, on August 29, 1995. The sheriff returned proof of service for each summons to Plaintiffs' counsel, as he had been instructed.

On August 29, 1995, the District Court dismissed the complaint on the grounds that Plaintiffs failed to file proof of service for each summons with the clerk of court within the three years proscribed by Rule 41(e), M.R.Civ.P. Plaintiffs moved for reconsideration stating that they did not receive proof of service on the three summonses until August 31, 1995, three days after the expiration of the three-year period, and that they mailed the proof of service for each summons to the clerk of court for filing on September 2, 1995. The District Court denied Plaintiffs' Motion for Reconsideration and Plaintiffs appeal

Issue 1.

Did the District Court err in determining that Plaintiffs failed to meet the requirements of Rule 41(e), M.R.Civ.P., thereby requiring dismissal of their claim?

Our standard in reviewing a district court's conclusions of law is to determine whether the court's interpretation of the law is correct. Sinclair v. Big Bud Mfg. Co. (1993), 865 P.2d 264, 266 (citing Steer, Inc. v. Department of Revenue (1990), 474-75, 803 P.2d 601, 603).

The District Court dismissed Plaintiffs' complaint because Plaintiffs failed to file proof of service for each summons with the clerk of court within three years of the commencement of this action. Plaintiffs filed their complaint on August 28, 1992. Under Rule 41(e), M.R.Civ.P., the summonses for all three Defendants should have been served and filed by August 28, 1995. However, Defendant Huestis was not served with a summons until August 29, 1995. In addition, proof of service upon all three Defendants was not filed with the clerk of court until September 5, 1995. Rule 41(e), M.R.Civ.P. provides in pertinent part:

> all actions heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced, on its own motion, or on the motion of any party interested therein, whether named in the complaint as a party or not, unless summons shall have been issued within 1 year, or unless summons issued within one year shall have been served and filed with the clerk of the court within 3 years after the commencement of said action, or unless appearance has been made by the defendant or defendants therein within said 3 years. [Emphasis added.] Plaintiffs contend that as long as the summonses were served

within three years, filing proof of service with the clerk of court is a mere formality and failure to file should not preclude proceeding with their claim. Plaintiffs rely on Livingston v. Treasure County (1989), 781 P.2d 1129, for this proposition.

In Livingston, the plaintiff filed a complaint on November 27, 1985, alleging personal injuries due to the negligence of defendant's employees. A summons was issued on the same day. Three years later, on November 27, 1988, plaintiff delivered the summons and complaint to the sheriff, who served defendant on that day. Plaintiff did not file proof of service of the summons with the district court until December 20, 1988. We held in Livingston that filing proof of service is "simply a ministerial act" and failure to file within three years of the commencement of the action did not require dismissal. Livingston, 781 P.2d at 1131.

Having carefully considered Livingston and other more recent decisions involving Rule 41(e), M.R.Civ.P., we now conclude that our interpretation of this Rule in Livingston was incorrect. As Justice McDonough pointed out in his dissent in Livingston,

> [t]he language of the rule clearly and unequivocally requires the dismissal of lawsuits when the return of service fails to be "filed with the Clerk of

Court within three years after the commencement of said action." Such words should be given their plain and ordinary meaning.

Section , MCA, Rierson v. State (1980), 188 Mont.

522, 614 P.2d 1020. Livingston, 781 P.2d at 1131.

In addition, we stated in First Call v. Capital Answering Serv., Inc. (1995), 898 P.2d 96, 97, that:

It is an oft repeated rule of statutory construction, equally applicable to our interpretation of the rules governing practice and procedure in the courts of this State, that "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section , MCA.

Moreover, if the language is clear and unambiguous, no further interpretation is required.

The language of Rule 41(e), M.R.Civ.P., is clear and unambiguous; all actions shall be dismissed unless summons issued within one year "shall have been served and filed with the clerk of the court within 3 years after the commencement of said action."

We therefore hold that filing proof of service with the clerk of court is not "simply a ministerial act" as we stated in Livingston and we overrule Livingston on that basis.

Furthermore, we reasoned in Livingston that dismissing an action because the plaintiff failed to file proof of service with the clerk of court within the three-year period proscribed by Rule 41(e) was too harsh a result and prejudicial to the plaintiff. On the contrary, permitting a plaintiff to disregard the mandates of Rule 41(e) is prejudicial to the defendant and defeats the purpose of the Rule which is to promote the diligent prosecution of claims once suit is filed.

In the case before us, Plaintiffs were less than diligent in proceeding with their claim. They filed the complaint two days before the statute of limitations on their claim expired. They did not issue the original summonses until the month before the one-year period dictated by Rule 41(e) elapsed, and they did not attempt to issue amended summonses until one week before the three-year period dictated by Rule 41(e) elapsed.

Moreover, since the three-year period for serving a summons set forth in Rule 41(e) was about to expire, Plaintiffs could have taken any one of several steps to insure that they complied with all of the requirements of that Rule. First, rather than instructing the Sheriff to return proof of service for each summons to Plaintiffs' counsel, Plaintiffs could have requested that the Sheriff file the proof of service with the clerk of court as soon as service had been accomplished. Second, Plaintiffs could have requested that the Sheriff serve the summonses and return the proof of service to Plaintiffs by a specific date.

Third, Plaintiffs could have asked the Sheriff to call them when service was made so that Plaintiffs could pick up the proof of service rather than having the Sheriff mail it to them. And, finally, Plaintiffs could quite simply have issued the amended summonses a few days sooner than they did.

The dissent believes that our decision to overrule Livingston should be applied prospectively only, as it would be an injustice to deny the Plaintiffs the opportunity to present their case before a tribunal of this State. However, as we have just demonstrated, the Plaintiffs had every opportunity to present their claim. It is because of their lack of diligence that they are now precluded from proceeding.

Rule 41(e) has at all times pertinent to this action required that summons be served and filed with the clerk of court within three years of the commencement of the action. Consequently, this is not a question of whether a judicial revision of a procedural rule should have retroactive application, as Rule 41(e) has not been revised. Rather, this is a question of whether a change in the judicial interpretation of a long-existing procedural rule should have retroactive application.

It is an often cited judicial canon that retroactivity "is not favored in the law," hence "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Landgraf v. USI Film Products (1994), 511 U.S. 244, 114 S.Ct. 1483, 1496, 128 L.Ed.2d 229 (quoting Bowen v. Georgetown University Hospital (1988), 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493). However, the United States Supreme Court maintains that "[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is fa- miliar to every law student." Rivers v. Roadway Express, Inc. (1994), 511 U.S. 298, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (quoting United States v. Security Industrial Bank (1982), 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235). "Judicial decisions have had retrospective operation for near a thousand years." Rivers, 511 U.S. at ___, 114 S.Ct. at 1519 (quoting Kuhn v. Fairmont Coal Co. (1910), 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (Holmes, J., dissenting)). Moreover, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Rivers, 511 U.S. at ___, 114 S.Ct. at 1519.

Similarly, this Court has often stated that judicial decisions will be given retroactive effect. Kleinhesselink v. Chevron, U.S.A. (1996), [277 Mont. 158], 920 P.2d 108, 111; Porter v. Galarneau (1996), 911 P.2d 1143, 1150; State, City of Bozeman v. Peterson (1987), 739 P.2d 958, 960. To illustrate, in First Call v. Capital Answering Serv., Inc. (1995), 898 P.2d 96, when called upon to interpret another provision of Rule 41(e), this Court held that dismissals under the Rule are dismissals with prejudice and must be given res judicata effect. In so holding, the Court overruled two prior decisions in direct opposition to the holding in First Call, and remanded the case to the District Court for entry of an order dismissing the complaint with prejudice.

Even if we considered the interpretation of Rule 41(e) in the instant case as a revision of the Rule, that revision could still be applied retroactively under our existing case law. Section , MCA, provides:

> When laws retroactive. No law contained in any of the statutes of Montana is retroactive unless expressly so declared.

This Court has repeatedly interpreted the above statute by defining a retroactive law as one that takes away or impairs vested rights acquired under existing laws or creates new obligations or imposes new duties in respect to transactions already past. Castles v. State ex rel Mont. Dept. of Highways (1980), 609 P.2d 1223, 1225; Matter of Water Rights No. 101960-41S (1991), 816 P.2d 1054, 1058; Porter, 911 P.2d at 1150. However, this Court has simultaneously pointed out that a statute that modifies the procedure for exercising a vested right or carrying out a duty does not constitute retroactive legislation. Castles, 609 P.2d at 1225; Matter of Water Rights, 816 P.2d at 1058. Although the guiding principle is Sec. , MCA, it has been held that where a statute is procedural, rather than substantive, Sec. , MCA, has no application, and the statute in question will be applied to a cause of action arising before its enactment. Boehm v. Alanon Club (1986), 722 P.2d 1160, 1162. See Saint Vincent Hosp. v. Blue Cross (1993), 862 P.2d 6, 9; State Compensation Ins. v. Sky Country (1989),  780 P.2d 1135, 1137; Weiss by and through Weiss v. State (1986), 712 P.2d 1315, 1316; State v. District Court of Fourth Judicial District (1966), 417 P.2d 109, 112. When a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether the suit has been instituted or not, unless there is a saving clause as to existing litigation. Fourth Judicial District, 417 P.2d at 112.

In like manner, the United States Supreme Court has stated that a retroactive law is one that takes away or impairs vested rights but "[n]o one has a vested right in any given mode of procedure." Ex parte Collett (1949), 337 U.S. 55, 71, 69 S.Ct. 944, 953, 93 L.Ed. 1207. "Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." Landgraf, 511 U.S. at ___, 114 S.Ct. at 1502. "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." Landgraf, 511 U.S. at ___, 114 S.Ct. at 1502.

Hence, both the United States Supreme Court and this Court have repeatedly ruled that judicial decisions, particularly on procedural matters, may be applied retroactively. Moreover, while stare decisis is a fundamental doctrine which reflects our concerns for stability, predictability and equal treatment, stare decisis does not require that we follow a manifestly wrong decision. Formicove, Inc. v. Burlington Northern, Inc. (1983), 194-95, 673 P.2d 469, 472. The doctrine of stare decisis is not an inflexible rule since previous decisions should not be followed to the extent that error may be perpetuated. State v. State Board of Examiners (1957), 309 P.2d 336, 340.

Accordingly, we hold that the District Court was correct in dismissing Plaintiffs' complaint because Plaintiffs failed to file proof of service of summons with the clerk of court within three years of the commencement of this action.

Issue 2.

Did Plaintiffs file their Notice of Appeal in a timely manner?

Defendants contend that Plaintiffs' appeal in this matter is untimely because the District Court's order dismissing Plaintiffs' complaint was filed on August 29, 1995, and Plaintiffs' Notice of Appeal was not filed until November 8, 1995. Defendants argue that under Rule 5, M.R.App.P., a Notice of Appeal should have been filed within 30 days of the District Court's order dismissing Plaintiffs' complaint. Rule 5, M.R.App.P, provides, in part:

> (a) Appeals in civil cases.
>
> (1) In civil cases the notice of appeal required by Rule 4 shall be filed with the clerk of the district court within 30 days from the date of the entry of the judgment or order appealed from, except that in cases where service of notice of entry of judgment is required by Rule 77(d) of the Montana Rules of Civil Procedure the time shall be 30 days from the service of notice of entry of judgment. ... [Emphasis added.] Plaintiffs assert that they did not receive a Notice of Entry

of Judgment as required by Rule 5, M.R.App.P., and Rule 77(d), M.R.Civ.P. Rule 77(d), M.R.Civ.P., provides, in part:

> Notice of entry of judgment or order served. Within 10 days after entry of judgment or an order in an action in which an appearance has been made, notice of such entry, together with a copy of such judgment or order or general description of the nature and amount of relief and damages thereby granted, shall be served by the prevailing party upon all parties who have made an appearance, but any other party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. [Emphasis added.] As the prevailing party, Defendants should have served

Plaintiffs with a notice of entry of judgment. Plaintiffs would then have had 30 days from the service of the notice of entry of judgment to file their Notice of Appeal. Rule 5, M.R.App.P. It is the filing of a notice of entry of judgment that begins the running of the time limit for filing a notice of appeal. In re Marriage of Robertson (1989), 773 P.2d 1213, 1216 (citations omitted). Since Defendants failed to serve Plaintiffs with a notice of entry of judgment, the 30 days allowed Plaintiffs to file the notice of appeal never began to run. Robertson, 773 P.2d at 1216.

Defendants also contend that Plaintiffs' motion for reconsideration, filed September 5, 1995 and denied by the District Court on October 13, 1995, did not extend the deadline for filing a Notice of Appeal. Since we have already stated that the time allowed Plaintiffs to file their Notice of Appeal never began to run, there was, thus, no need for an extension. We nevertheless address Defendants' contention to further clarify this issue.

Under Rule 5(a)(4), M.R.App.P., a Notice of Entry of Judgment is not required to begin the running of the time for filing a Notice of Appeal when a motion has been made under Rules 50(b), 52(b), or 59, M.R.Civ.P. When a timely motion under any of these rules is filed in the district court by any party,

> the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion, or if applicable, from the time such motion is deemed denied at the expiration of the 45-day [now 60-day] period established by Rule 59(d), Montana Rules of Civil Procedure.

Rule 5(a)(4), M.R.App.P.

A motion for reconsideration is not one of the motions referred to in Rule 5(a)(4), M.R.App.P. In fact, a motion for reconsideration is not one of the post-judgment motions provided for, or authorized, by the Montana Rules of Civil Procedure. Taylor v. Honnerlaw (1990), 790 P.2d 996, 997-98 (citing Anderson v. Bashey (1990), 787 P.2d 304, 305).

This Court has previously stated that a motion for reconsideration will not be equated to a Rule 59(g) motion to alter or amend a judgment unless the substance of the motion constructively requests the court to alter or amend the judgment. Miller v. Herbert (1995), 135-36, 900 P.2d 273, 275. Instead, we will look to the substance of the motion to identify what motion has been presented. Miller, 900 P.2d at 275. Since Plaintiffs' motion for reconsideration is not one of the motions contemplated by Rule 5(a)(4), M.R.App.P., the 30-day limit allowed Plaintiffs to file their Notice of Appeal would not have begun to run with the denial of this motion. Robertson, 773 P.2d at 1216-17.

Accordingly, we hold that Plaintiffs did file their Notice of Appeal in a timely manner.

Affirmed.

CHIEF JUSTICE TURNAGE, JUSTICES ERDMANN and GRAY concur.

JUSTICE NELSON specially concurs.

I agree with Justice Trieweiler's dissent in one respect. This case is about fairness. It is about the fairness inherent in simply applying the rules of civil procedure as they are written, instead of interpreting them in some strained fashion so as to allow one party to disregard the rules at the expense of the other party. The rules of civil procedure are not

written to secure a tactical advantage to either the plaintiff or the defendant; rather, they are written to regulate the course of litigation, to level the playing field, and to move a lawsuit forward at something more than the glacial speed. The rules are there for both parties to read and to follow. If lawyers choose to conduct their practices in the eleventh hour, then neither they nor their clients should be particularly surprised when, whether through dalliance, neglect or lack of attention to the time limits clearly set forth in the rules, time eventually runs out.

Characterizing and dismissing the majority's legal analysis as "sanctimonious," "pontification" and "mumbo-jumbo," while lending nothing to the development, to the understanding or to the exposition of the law, does reaffirm the uninformed and pervasive perception that many members of the public already have of lawyers, courts and judges as doing little more than dancing on pin heads. Moreover, this sort of sound-bite legal writing is guaranteed to provide easy copy for the press, editorial writers and talk-show hosts--especially those who could care less about reading, much less fairly and intelligently reporting, the opinion when there is a dissent full of one-liners to quote. However, it is precisely this sort of rule-from-the-gut and shoot-from-the-hip approach that produces result-oriented decisions like Livingston. That aside, until some higher power grants this writer the authority and omniscience to split the baby on some basis other than what, in this case, the rule clearly requires, I would rather simply apply the law as it is written, whether that is an intellectually detached exercise or not, and leave ruling from the gut to others.

Finally, contrary to the dissent, it is not the majority opinion that has denied these litigants their day in court but, rather, it is the litigants' own failure to pursue their lawsuit with diligence and within the time limits unambiguously set forth in Rule 41(e). If those time limits or the requirements of the rule serve nothing more than to impose meaningless barriers to litigation, as the dissent seems to believe, then the rule should be changed. Unless and until it is however, Blaine Bank and Larsen have as much right to rely on this rule in their effort to avoid the expense and time of defending Haugens' lawsuit--a suit of questionable merit, in any event, given our prior decisions in Blaine Bank of Montana v. Haugen (1991), 816 P.2d 447, and in Blaine Bank of Montana v. Haugen (1993), 858 P.2d 14--as Haugens had in bringing suit and in prosecuting this cause of action in the first place.

JUSTICE GRAY joins in the foregoing special concurrence.

JUSTICE LEAPHART, dissenting.

I would not overrule Livingston v. Treasure County (1989), 781 P.2d 1129; therefore, I dissent from this Court's opinion and would hold that the District Court erred in dismissing the Haugens' claim for failing to file the return of service within the three-year time limit of Rule 41(e), M.R.Civ.P.

In Livingston, the Court recognized that the purpose of Rule 41(e), M.R.Civ.P., is to ensure that actions are timely prosecuted. The Court then went on to explain how service

of the summons is "indispensable to the timely prosecution of an action ...." The Livingston Court also acknowledged that: "Filing the return, on the other hand, is simply a ministerial act .... It is filed with the court only to document on the record the fact that service has been completed." The Court concluded that, "summary dismissal of this lawsuit for failure to file the return is not appropriate." Livingston, 781 P.2d at 1130-31. I believe that the rationale of Livingston is sound and I would not overrule that decision.

Furthermore, it is patently unfair to overrule Livingston as it applies to the Haugens. The Haugens relied on our holding in Livingston. The Court reasons that adherence to Livingston prejudices the defendant and defeats the purpose of the Rule which is to promote diligent prosecution of claims once suit is filed. I fail to see how adherence to Livingston prejudices the defendant. Here, as in Livingston, the defendant has been served with process. It is that service of process (not the filing of the return of service) that triggers subsequent procedural steps such as the filing of the answer, Rule 12(a), M.R.Civ.P., or motions to substitute a judge under Secs.  et seq., MCA. Thus, although it can be argued that failure to serve the summons and complaint within the proper time frame hinders the diligent prosecution of claims, the same cannot be said of failure to file the return of service. Whatever prejudice to the defendant that might arise from such a failure is more than outweighed by the prejudice to the plaintiff when the rationale of Livingston is overruled and he finds that he is forever barred from litigating his claim.

The majority relies on First Call, Inc. v. Capital Answering Service, Inc. (1995), 898 P.2d 96, 97, for the proposition that this Court now follows a strict statutory interpretation of Rule 41(e), M.R.Civ.P. However, First Call involved a failure to serve the summons not merely a failure to file the proof of service as in Livingston and the present case. The factual similarity between this case and Livingston gave the Haugens cause to rely on its precedent. Furthermore, although two other decisions were overruled in First Call, Livingston was not one of them. This further justifies the Haugens' reliance on Livingston.

Additionally, the commissioner's notes to Rule 41(e), M.R.Civ.P., state that Rule 41(e) was amended in 1993 to comport with the mandate in Livingston. In Livingston the Court directed the legislature to conform the Montana Rule to the Federal counterpart which did not require return of service within three years. At the time of Livingston, Federal Rule 4(g), F.R.Civ.P., stated that the "[f]ailure to make proof of service does not affect the validity of the service." Although the 1993 amendment to Montana Rule 41(e), M.R.Civ.P., did not accomplish the directive set forth in Livingston, (the Rule still requires that the summons be "served and filed with the clerk" within three years) the commission comments indicate that the amendment conforms Rule 41(e) to Livingston. These comments, although incorrect, gave the Haugens all the more reason to believe that Livingston was still good law. Haugens should not be thrown out of court for having relied on our decision in Livingston.

The decision to overrule Livingston should be applied prospectively only. While "[j]udicial decisions have had retrospective operation for near a thousand years," (citing Kuhn v. Fairmont Coal Co. (1910), 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228,

239 (Holmes, J. dissenting)) that retroactivity is based, in large part, on the fact that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Rivers v. Roadway Exp., Inc. (1994), 511 U.S. 298, ___, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274, 288-89.

Retroactive application makes sense when a court is interpreting the statute for the first time, and is making a declaration of what the statute means now, as well as what it meant before the decision. However, retroactive application makes little, if no, sense when a court is overruling a prior decision which rendered an interpretation of that statute directly contrary to the present interpretation. In such circumstances, although a court may be declaring the meaning of the statute for future purposes, it cannot be said that the court is now declaring what the statute meant before the present decision. On the contrary, for the seven years immediately preceding the present decision, Rule 41(e), as interpreted by this Court in Livingston, did not require that the return of summons be filed within the three-year time limit. The traditional justification for retroactively applying this new "authoritative statement" of the law to the Haugens is absent.

An exception to the general rule of retroactive application of judicial decisions should be invoked to prevent manifest injustice when, as here, a plaintiff is denied his day in court for having relied on judicial interpretations of procedural rules.

The United States Supreme Court has recognized that the general rules of prospective and retrospective application of statutes and administrative rules may be suspended where injustice would be worked by their application in a particular case. See Thorpe v. Housing Authority of Durham (1969), 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (recognizing an exception to the rule that appellate courts must apply the law in effect at the time it renders its decision to prevent manifest injustice); Landgraf v. USI Film Products (1994), 511 U.S. 244, ___, 114 S.Ct. 1483, 1502 n.29, 128 L.Ed.2d 229, 258 n.29 (recognizing a "common-sense" exception to retroactive application of procedural rules, even those explicitly requiring retroactive application, so as not to work injustice, as in the case where "[a] new [procedural] rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime ...").

The Haugens understandably relied on the "old regime," that is, this Court's interpretation of Rule 41(e) in Livingston and, as a result, were denied the opportunity to present their case before a tribunal of this state. To avoid this injustice suffered by the Haugens, this Court should invoke an exception to the general rule of retroactive application of judicial precedents and apply this decision prospectively only.

JUSTICE TRIEWEILER and JUSTICE HUNT join in the foregoing dissent.

JUSTICE TRIEWEILER dissenting.

I concur completely with the dissenting opinion authored by Justice Leaphart.

I write separately to respond to the majority's observation that its result is justified by its analysis of prior case law. If it was this Court which erred in Livingston v. Treasure County (1989), 781 P.2d 1129, where is it written that these litigants must suffer the consequences of its mistake?

To me, the issue presented in this case is not what "authority" this Court has, based on what prior cases said under different factual situations about the retroactive application of judicial decisions. The issue presented in this case relates to simple notions of fairness, common sense, and respect for the members of the legal profession. The majority opinion shows a total disregard for any of these concerns.

In the past, this Court has told attorneys that although service of the summons and complaint must be completed within three years from the date on which a complaint is filed, filing proof of that service is a mere ministerial act, and failure to accomplish filing of that document within three years does not require dismissal of the complaint. Livingston, 781 P.2d at 1130-31. Attorneys who understand this Court's role in fashioning rules of civil procedure, as well as its responsibility for interpreting them, had every bit as much reason to rely on that decision as they did on the literal language of Rule 41(e), M.R.Civ.P. Indeed, this same majority would be disappointed to learn that its decisions were ignored by the legal profession.

Now, without the prior notice that the majority considers so important before even the most trivial amendment to the rules of procedure, the majority concludes that this Court was wrong when it decided Livingston.

The majority says to practicing attorneys that if you relied on what we said in that case, it is too bad for you. Your client is out of court with no recourse. The merits of your client's case make no difference to us.

No amount of pontification by the majority about retroactive application of judicial decisions can disguise its callous disregard for the rights of the litigants in this case. Cutting through the legal mumbo-jumbo in the majority opinion, the practical effect of its decision is simply indefensible based on any notions of fairness, common sense, or respect for the legal profession.

According to the majority opinion, this Court previously misled attorneys by its decision in Livingston, and although we normally expect our opinions to be followed by the legal profession, it is too bad for them if they followed that decision. If private individuals engaged in similar conduct, we would be quick to invoke principles of estoppel to prevent the same injustice that has occurred in this case. It is disappointing, to say the least, that this Court demands less of itself than it expects from private citizens in the conduct of their private affairs.

Equally disturbing is the intellectual detachment from reality represented by Justice Nelson's concurring opinion. It suggests that the majority does not have the foggiest notion what this case is really about. It speaks of one party disregarding rules "at the

expense of the other party." It talks about "tactical advantages." It proclaims the need to "level the playing field," and "move a lawsuit forward." It never does explain, however, just exactly what the sheriff's return of service has to do with any of these lofty goals.

For the majority's information, what we are talking about in this case is simply the time at which the affidavit of a process server is filed with the clerk of court. The affidavit serves absolutely no practical purpose unless at some point in the future some party disputes having been served with process. The failure to file it prejudices no one and provides neither party with a tactical advantage. The date on which the affidavit is filed has nothing to do with the progress of litigation. In fact, if the affidavit is never filed it would make absolutely no difference to anyone.

What we are talking about in this case is the ultimate example of exalting form over substance. However, what is particularly offensive about the majority's purely intellectual exercise is that it comes at the expense of innocent people who were previously misled by the majority to believe that what they did was okay. The author of the majority opinion can excoriate the plaintiffs and their attorney as vitriolically as he wants, but cannot change the fact that they did exactly what they were told by this Court they could do. In all of the author's hyperbole, there is no mention of right and wrong.

If the sanctimonious approach represented by the concurring opinion is what "real law" is all about, then this Justice would rather "rule from the gut." However, if it is any comfort to the author of the majority opinion, I doubt that this Court's decision regarding return of service will generate much interest from the press, or from anyone else, other than the parties affected.

For these reasons, in addition to those expressed in Justice Leaphart's dissenting opinion, I dissent from the majority opinion.

JUSTICE HUNT joins in the foregoing dissenting opinion.

JUSTICE HUNT dissenting.

I concur with everything that is said in the dissents of Justice Leaphart and Justice Trieweiler and make the following additional points.

I. Refusing relief for such a minor error does not comport with the law's strong preference for trial on the merits.

As the other dissenters have so ably pointed out, the error complained of in this case is a truly minor one. As in Aesop's Fables, the majority like the mountain gave a mighty rumble and, as in the fable, out came a mouse. The mouse in this case is the failure to document for the record the accomplishment of service of process, since the case does not address or affect the propriety of the service itself. Since the error alleged is obviously a purely procedural one, it should not out-weigh this Court's oft-stated preference for a trial on the merits. As we have explicitly stated, "[t]he policy of the law

is to favor a trial on the merits." Hoyt v. Eklund (1991), 815 P.2d 1140, 1142. See also Johnson v. Murray (1982), 656 P.2d 170, 179 (Justice Shea, dissenting).

In an analogous case, Justice Bistline of Idaho dissented from a majority decision to forcefully remind the Idaho Supreme Court of its mandate:

> [I]t has been well understood for over forty years that the policy of the Supreme Court has been, and hopefully will be, to foster the determination of legal controversies with the goal of administering justice. ...
>
> ....
>
> It has long been judicial policy in Idaho that controversies be determined and disposed of each on its own particular facts and as substantial justice may require. The exercise of judicial discretion should tend to bring about a judgment on the merits. ... There is, of course, a strong public policy in favor of hearing appeals on their merits and of not depriving a party of his right of appeal because of technical noncompliance where he is attempting to perfect his appeal in good faith.

Gubler v. Boe (Idaho 1991), 815 P.2d 1034, 1039-40 (Justice Bistline, dissenting; citations omitted). Such a reminder is appropriately given to this Court as well. As the California Court of Appeals noted:

> trial of a cause of action on the merits is the cornerstone of our justice system and it is no wonder the law looks with disfavor on dismissal for procedural default. Such dismissal is even harder to swallow when the default is a mere technicality and the record evinces no intent by the appellants to willfully disrespect the court.

Pacific Lining Co. v. Raging Waters, Inc. (Cal.Ct.App. 1991), 282 Cal.Rptr. 769, 781 (citation omitted).

The error complained of here is a mere technicality if there ever was one, and neither party suggests it was accomplished in an attempt to show disrespect either to the District Court or to this Court. With the foregoing in mind, I cannot see how tossing out an entire case before the merits are even approached, much less addressed, can be reconciled with the goal of administering justice.

II. Refusing relief for such a minor error denies substantial justice.

While the policy favoring a trial on the merits may be just that--a general policy--its underlying rationale is that every party who in good faith approaches a court of law is entitled to substantial justice. In Montana, the mandate that substantial justice be done is most often seen and most clearly articulated in cases which seek to set aside defaults and cases which seek to exercise long-arm in personam jurisdiction over out-of-state parties.

See, respectively, In re Marriage of Shikany (1994), 887 P.2d 153; and In re Marriage of Lewis (1989), 784 P.2d 897. However, it is obviously a policy which is equally applicable in all cases. Certainly, no one would argue that any case is of so little import that substantial justice need not be done. Yet it has not been done in this case. Instead, the majority has used this minor procedural point to punish a party for almost missing deadlines in the past, an occurrence which is neither erroneous nor worthy of punishment. Furthermore, the very first rule of civil procedure dictates that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." Rule 1, M.R.Civ.P. (emphasis added). This too alludes to the indispensable and time-tested rule that courts must pursue substantial justice.

Where is the substantial justice in the majority's disposition of this case? If we were addressing a rule of some importance, which many parties are ignoring and the disregard of which is adversely affecting the administration of justice by causing delay or clogging up the court systems, I could see the need to draw a firm line and make one transgressor an example to others who might contemplate the same actions. However, that is not the situation with which we are faced today. Instead, a party has been deprived of its day in court because of a minor technical error which did not, in and of itself, prejudice the other party in the least. I cannot agree with such a result.

III. Factual "close calls" and the benefit of hindsight in this case are irrelevant to deciding the legal issue presented.

The majority opinion makes much of the fact that the Haugens have closely approached various deadlines in the past, filing the complaint two days before the deadline for filing; issuing the original summons 30 days before the deadline; and issuing the amended summons one week before the deadline. I fail to see the relevance of these comments. In fact, the Haugens had never missed a deadline in the case until the minor procedural one which is at issue here. While they may have filed other documents later rather than sooner in the various periods allotted, they were free to file those documents at any time before the deadline--be it one year, one month, one day, or one hour. The majority seems to suggest that leaving such matters lie for a time will come back to haunt the parties, because this Court will infer neglect and prejudice even if the filing deadlines are in fact complied with. This is an unnecessary, misleading, and erroneous implication.

The majority also notes the ease with which this error could have been avoided. This is also largely irrelevant. Hindsight is 20/20, and it is safe to assume that if the Haugens or their counsel had foreseen how this minor error would impact their case, they would have taken hasty and appropriate steps to prevent it from occurring. Clearly, the step of filing the summons with the clerk of court was simply forgotten. Therefore, it doesn't matter how easily the Haugens could have prevented this result had they remembered the step. In fact, due to the confusion in switching lawyers, it was inadvertently omitted. I find it ironic that the majority is not willing to cut the Haugens any slack in consideration of how minor this procedural point really is. It is, however, willing to condemn them further for the "ease" with which it might have been avoided, based on the presupposition that

the error sprang from willful negligence instead of inadvertent neglect--a presupposition which is wholly unsupported by the record.

In short, the majority may be following the black letter of the law in refusing to allow this case to proceed, but it has not heretofore been the general policy of this Court to rigidly adhere to that black letter at the obvious expense of equity and fairness. If, as I fear, this case stands for the proposition that form will now be exalted over substance and procedure over the merits, it appears that the rumblings in the majority opinion have given the fabled mouse far greater significance than Aesop ever intended.

JUSTICES TRIEWEILER and LEAPHART concur in the foregoing dissent.