DA 07-0549

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 315

CURTIS R. KRUER, and STEPHANIE G. KRUER,

       Plaintiffs and Appellees,

   v.

THREE CREEKS RANCH OF WOMING, L.L.C.,
THREE CREEKS RANCH, L.L.C., AND
REID L. ROSENTHAL,

       Defendants, Counter-Claimants
       and Appellants,

   v.

CURTIS R. KRUER AND STEPHANIE G. KRUER
and DOES 1-X, and all other persons, unknown,
claiming or who might claim any right, title, real estate
or interest in or lien or encumbrance upon the property
described in the complaint adverse to Three Creeks Ranch
of Wyoming, LLC, or Three Creeks Ranch LLC, ownership
or any cloud upon plaintiff's title thereto whether such
claim or possible claim be present or contingent,

       Counter-Claim Defendants
       and Appellees.

APPEAL FROM:    District Court of the Fifth Judicial District,
               In and For the County of Madison, Cause No. DV 29-03-18
               Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           Quentin M. Rhoades, Valerie C. Grubich, Sullivan, Tabaracci
           & Rhoades, P.C., Missoula, Montana

      For Appellees:

           Gregory C. Black, Corette, Pohlman & Kebe, Butte, Montana

Submitted on Briefs:  July 30, 2008

Decided:  September 9, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Three Creeks Ranch, LLC, (Three Creeks) appeals the ruling of the Fifth Judicial District Court of Madison County awarding challenged water rights to Curtis and Stephanie Kruer (Kruers) and requiring Three Creeks to pay Kruers' attorney's fees and costs. We affirm.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 Did the District Court exceed its jurisdiction by finding and concluding that the senior water right for Wisconsin Creek was appurtenant only to land transferred to Kruers?

¶4 Did the District Court incorrectly interpret the Memorandum of Negotiated Settlement Terms (Settlement Agreement) executed by the parties following mediation?

¶5 Did the District Court incorrectly award attorney's fees and costs to Kruers?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 This case involves a dispute over the use of water from Wisconsin Creek in Madison County, near Sheridan, Montana. Two water decrees—Claim No. 41C-W-193917-00 (Right 917) and 41C-W-193918-00 (Right 918), issued in 1864 and 1933 respectively—provided low water and high water use rights from Wisconsin Creek to an approximate 67-acre parcel identified in the decrees. In 1999, Three Creeks purchased approximately 2,500 acres of land in Madison County, including the 67 acres designated in Rights 917 and 918. At that time, Reid Rosenthal was a managing member of and an agent for Three Creeks. Some or all of the purchased land was intended to be developed

3

in phases into Three Creeks Ranch Subdivision. The portions of the 67 acres irrigated by Rights 917 and 918 were divided into lots designated as Lot 11V-2, Lot 20, Lot 21[1] and the "Commons Area." Lots 11V-2, 20V and 21V lie south of Wisconsin Creek and the Commons Area lies north of the creek.

¶7 In fall 1999, Stephanie Kruer began working for Rosenthal. In April 2000, the Kruers signed an agreement to purchase Lots 20V and 21V of Three Creeks Ranch Subdivision, Phase I. While the purchase agreement indicates that Lots 20V and 21V consisted of approximately 54 acres of the 67 acres identified in Rights 917 and 918, subsequent evidence revealed that these two lots contained approximately 41 acres and a homestead. Under the purchase agreement, the Kruers obtained 80% of the water rights from each of the two existing water decrees, and Three Creeks retained the remaining 20% of each decree. In May 2000, the Kruers and Three Creeks formed a limited liability corporation and were business partners until sometime in the summer of 2001, when the Kruers' and Rosenthal's relationship deteriorated drastically. The disputes and grievances between the parties continued and escalated throughout 2001 and 2002. While closing on the transaction eventually occurred in July 2002, after many delays, this did not end the parties' hostile relationship or their acrimonious accusations against one another.

¶8 In March 2003, the Kruers filed a complaint against Three Creeks and Rosenthal. The Kruers amended their complaint in August 2004 seeking a declaratory judgment that

---

[1] We note that throughout this proceeding Lot 20V also has been referred to as Lot 20 and Lot 20V-2. Lot 21V has been referred to at times as Lot 21 and Lot 21V-2. For purposes of consistency, we will refer to these lots as Lot 20V and 21V.

they owned Lots 20V and 21V in fee simple and were not trespassers or holdover tenants. They also sought a protective order against Rosenthal and damages for, among other things, intentional and negligent infliction of emotional distress, breach of contract, actual and constructive fraud, and breach of the covenant of good faith and fair dealing. They sought attorney's fees and costs. Three Creeks and Rosenthal responded to the Kruers' amended complaint, set forth numerous affirmative defenses, and counter-claimed for, among other things, breach of contract, unjust enrichment, fraud and trespass.

¶9      As a result of a mediation and settlement agreement in August 2005, Three Creeks released all claims of title and ownership to Lots 20V and 21V. The Settlement Agreement also provided, among other things, that the Kruers received Lot 11V-2 of the Three Creeks Ranch Subdivision by warranty deed. Therefore, under the combined terms of the purchase agreement and the Settlement Agreement, the Kruers owned Lots 11V-2, 20V and 21V as well as 80% of the rights to water under Rights 917 and 918. The Settlement Agreement did not contain an express division of the remaining 20% of either Right 917 or 918, but it did provide that the Kruers got the "[w]ater rights appurtenant to Lot [11V-2] only and not affecting any other [Three Creeks'] irrigation or water rights." This language precipitated a subsequent disagreement when the parties could not agree on what water rights were appurtenant to the newly acquired Lot 11V-2. As a result, in early November 2005 Three Creeks and the Kruers each filed motions to enforce the Settlement Agreement. Rosenthal did not file an individual motion. As the District Court's rulings on these enforcement motions are the subject of this appeal, Rosenthal is not a party to this appeal.

5

¶10     The District Court held a hearing on the motions on December 30, 2005. At the outset of the hearing, the court stated that the 80/20 division of water rights established in the 2000 purchase agreement was not before it and it would not hear testimony on that division; rather, only the Settlement Agreement was at issue. The court also concluded that the Settlement Agreement was clear and unambiguous; therefore the court would not hear extrinsic evidence regarding other irrigation and water rights owned by Three Creeks. At the hearing, both parties presented evidence intended to assist the court in determining the amount of water rights appurtenant to Lot 11V-2.

¶11     On March 3, 2006, the court issued its Findings of Fact, Conclusions of Law and Order in which it addressed the division of water under Rights 917 and 918. It noted that Wisconsin Creek runs north of Lots 11V-2, 20V and 21V owned by the Kruers and south of property owned by Three Creeks, including an irrigable parcel called the "Commons Area." The court found that the flow rate of Right 917 was 1.25 cubic feet per second (c.f.s), or 50 miners inches, and the flow rate for Right 918 was 2.54 c.f.s., or 101.60 miners inches. The District Court reiterated that under the parties' purchase contract, the Kruers obtained 80% of 917 and 918 water rights for use on Lots 20V and 21V, or 1.00 c.f.s and 2.03 c.f.s. respectively, and Three Creeks retained the remaining .25 c.f.s. of Right 917 and .51 c.f.s. of Right 918.

¶12     The District Court then held that the entire flow from Right 917 was appurtenant to Lot 11V-2 and awarded it to the Kruers. The court based this determination on evidence which established that Three Creeks had not used any water from Right 917 to irrigate the Commons Area since it purchased the land in 1999. In other words, Three

6

Creeks had used all the water from Right 917 to irrigate the land south of Wisconsin Creek which the Kruers acquired under the purchase and settlement agreements. Additionally, the water commissioner testified that water from Right 917 had not been used to irrigate the Commons Area during his time as commissioner from 1997 through 2005.

¶13 The court declined to change the division of water flow pertaining to Right 918 until a survey of irrigated acreage was conducted to allow for an accurate allocation. The subsequent survey revealed that Lot 11V-2 contained 10.70 irrigated acres and the Commons Area contained 7.58 such acres. Over the complaints of Three Creeks, the court issued an order concluding that Lot 11V-2 contained 58.5% of the total 18.28 irrigable acres and was, therefore, entitled to 58.5% of Three Creeks' retained .51 c.f.s., which amounts to .30 c.f.s. of Right 918.

¶14 In another subsequent order, the District Court found that the Kruers were the prevailing party on the motions to enforce the Settlement Agreement. Therefore, in accordance with the "attorney fees" provision of the Settlement Agreement, it awarded fees and costs to the Kruers. After their attorney filed his affidavit of such fees and costs, Three Creeks challenged the reasonableness of the fees. The District Court ruled the attorney's fees were reasonable.

¶15 Three Creeks filed a timely appeal.

## STANDARDS OF REVIEW

¶16 We review questions for law for correctness. In the case at bar we are presented with three questions of law: the existence or lack of subject matter jurisdiction, the

court's interpretation of the terms and provisions of the Settlement Agreement, and the court's determination that the Kruers were the prevailing party and entitled to attorney's fees. *Boe v. Court Adm'r for the Mon. Jud. Branch*, 2007 MT 7, ¶ 5, 335 Mont. 228, ¶ 5, 150 P.3d 927, ¶ 5; *In re Petition of Deadman's Basin Users*, 2002 MT 15, ¶ 9, 308 Mont. 168, ¶ 9, 40 P.3d 387, ¶ 9. An award of attorney's fees is reviewed for an abuse of discretion. *El Dorado Heights Homeown. Ass'n v. Dewitt*, 2008 MT 199, ¶ 15, 344 Mont. 77, ¶ 15, 186 P.3d 1249, ¶ 15.

## DISCUSSION

¶17 *Issue One: Did the District Court exceed its jurisdiction by finding and concluding that the senior water right for Wisconsin Creek was appurtenant only to land transferred to Kruers?*

¶18 Three Creeks proffers several challenges to the District Court's water allocation: (1) the District Court lacked jurisdiction to award 100% of Right 917 to the Kruers; (2) the court incorrectly relied on historic use to conclude that Right 917 water was appurtenant to Lot 11V-2 and not the Commons Area; and (3) the court incorrectly concluded that awarding 100% of water from Right 917 would not affect any other Three Creeks' irrigation or water rights.

¶19 Three Creeks argues, as it did to the District Court, that the water rights decreed under Rights 917 and 918 had been determined by a prior water court adjudication; therefore, the District Court was constrained by this previous ruling in its determination of what rights were appurtenant to a single parcel of this land, *i.e.* Lot 11V-2. Under the decrees and the previous ruling, Three Creeks opines, all water from Rights 917 and 918 were appurtenant to *all* 67 acres identified in the decrees; thus *no* rights were appurtenant

8

to any individual parcel. As such, Three Creeks asserts, upon transfer of part but not all of the land subject to the decrees, the water rights should have been apportioned based upon irrigable acres transferred and retained. Three Creeks maintains that by allocating 100% of the water flow from Right 917 to Lot 11V-2 the District Court exceeded it jurisdiction because this allocation "effected a re-adjudication of an already decreed water right by re-determining the place of use of that right." In other words, because the Water Court had originally decreed Right 917's "place of use" to be the entire 67 acres, the court could not now "re-adjudicate" this right by re-defining that "place of use" as Lot 11V-2.

¶20 The Kruers argue on several grounds that the District Court did not venture into the exclusive domain of the Water Court. They maintain the court did not recognize or allocate a new water right, modify the existing temporary preliminary decree, issue a final decree on Wisconsin Creek, make a determination of flow rates, or alter the place of use of Right 917. Rather, the District Court exercised proper jurisdiction in interpreting the Settlement Agreement as requested by both parties.

¶21 Three Creeks does not dispute a district court's general jurisdiction to hear civil matters and cases at law and in equity under § 3-5-302, MCA, or its jurisdiction under § 85-2-406, MCA, to supervise the distribution of water among all appropriators. Presumably, it is Three Creek's position that these provisions do not grant jurisdiction in this case. We disagree. While a district court may not have jurisdiction to reallocate disputed water rights absent a contract, in this case, we have a contract that purports to make just such an allocation. Three Creeks contractually sold water rights to the Kruers.

9

Upon the parties' disagreement over *which* water rights were sold, the District Court was asked to resolve the disagreement and did so by interpreting the contract. This was wholly within the court's jurisdiction.

¶22 In *Deadman's Basin*, ¶ 15, we acknowledged that the water courts have exclusive jurisdiction to interpret and determine existing water rights. We also noted, however, that district courts have the authority to supervise the distribution of water that has already been adjudicated. Additionally, the district court in *Deadman's Basin* was required to interpret the terms of a water purchase contract and allocate the available water pursuant to the terms of the contract. *See also Castillo v. Kunnemann*, 197 Mont. 190, 642 P.2d 1019 (1982), in which the district court was required to determine what water rights had been conveyed through various land transfer contracts. These cases illustrate that the District Court had jurisdiction to interpret the Settlement Agreement and to award any amount up to and including 100% of Right 917 to the Kruers.

¶23 Three Creeks also complains that the manner in which the District Court determined the percentage of rights appurtenant to Lot 11V-2—by examining historic use—led it to its incorrect ruling. As indicated above, the District Court heard undisputed testimony that from its 1999 acquisition of the land, Three Creeks had used all the water from Right 917 to irrigate the acreage south of Wisconsin Creek. It therefore used *none* of the water to irrigate the Commons Area. The court also heard evidence that after the Kruers bought Lots 20V and 21V, the Kruers obtained, with Three Creeks' participation, a wheel line irrigation system for Lots 11V-2, 20V and 21V that required all the water flow from Right 917. The District Court determined, therefore, that

10

all the water from Right 917 was appurtenant to Lot 11V-2. Based on Three Creeks' historic use of Right 917 to irrigate only the land south of Wisconsin Creek exclusively, the court determined that Three Creeks failed to establish that awarding the Kruers full use of the water from Right 917 "would affect any other water rights" of Three Creeks.

¶24 Three Creeks maintains that making a determination based on historic use of water from Right 917 for irrigation purposes was improper. It argues that past use of the water rights "had nothing whatsoever to do with the previously adjudicated fact that the underlying water rights in dispute have been decreed by the Montana Water Court to be appurtenant to 67 acres . . . not any particular lot, tract or panel." Moreover, Three Creeks asserts that evidence was presented to show that water from Right 917 *was* allocated to the area north of Wisconsin Creek between 1986 and 1996, and therefore the court's ruling was erroneous.

¶25 The Kruers respond that the District Court was charged with determining what water rights Three Creeks intended to transfer to the Kruers as being appurtenant to Lot 11V-2 and that did not affect Three Creeks' other water and irrigation rights. They assert that a water right is appurtenant to the land where it is used; therefore, looking at historic use is a proper method for determining appurtenance in a land conveyance.

¶26 Under § 70-15-105, MCA, "[a] thing is deemed to be . . . appurtenant to land when it is by right used with the land for its benefit." A determination of whether water is appurtenant to the land is a factual determination. *Department of State Lands v. Pettibone*, 216 Mont. 361, 372, 702 P.2d 948, 954 (1985). It is undisputed that since 1997 the water from Right 917 has been used to beneficially irrigate the land south of

11

Wisconsin Creek—land now owned by the Kruers. It is also apparent that courts, both before the creation of the Water Court and after, have looked to historic use to determine whether water rights are appurtenant to the land.

¶27    In *Castillo*, to determine whether ditch and water rights were appurtenant to the Castillo's property, the Court relied on Kunnemann's testimony that he, as prior owner of two tracts of land now owned by the Castillos, and co-plaintiffs, Cotants, had irrigated those tracts with the water rights in question and the water was conveyed through the ditches running through the Castillo's property. *Castillo*, 197 Mont. at 196, 642 P.2d at 1023. Therefore, based on this historical beneficial use, the Court determined that the water and ditch rights were appurtenant to the plaintiffs' property. *Castillo*, 197 Mont. at 196, 642 P.2d at 1024.

¶28    Similarly, in *Axtell v. M.S. Consulting*, 1998 MT 64, 288 Mont. 150, 955 P.2d 1362, in determining whether the district court correctly granted summary judgment, we conducted a detailed analysis of water use rights to a specific parcel of property that had been transferred numerous times between 1936 and 1993. In concluding that material factual issues existed prohibiting the granting of summary judgment, we remanded the case to the district court instructing it to determine specifically whether transferred rights had been abandoned over the course of time based on use and non-use patterns, whether the priority of water right filings precluded a party from claiming certain water rights, and what rights were appurtenant to a parcel of property if the rights had not been abandoned.

¶29 It is evident from these cases that district courts have jurisdiction to determine appurtenance of water rights based on historic use. The District Court properly exercised that jurisdiction in the case at bar to determine, under the Settlement Agreement, what rights were appurtenant to Lot 11V-2.

¶30 In addition to challenging the District Court's reliance on historic use, Three Creeks challenges the District Court's allocation of water from Rights 917 and 918 based on the court's failure to satisfy the formula set forth in *Spaeth v. Emmett*, 142 Mont. 231, 383 P.2d 812 (1963). Three Creeks argues that, under *Spaeth*, an allocation of water rights must be based on total acreage irrigated under a decree. It surmises that the number of acres contained in the Kruers' Lots 11V-2 (10.7), 20V (20.75) and 21V (20.25) must be divided by the complete number of acres in the decrees, i.e., 67 acres. The resulting quotient would then be multiplied by the flow rate to determine how much water from each decree each party would receive. Three Creeks conducts this calculation thusly: Kruers own 52 acres of the total 67 acres, or 52/67. The flow rate of Right 917 is 50 miners inches. Fifty-two/sixty-sevenths of 50 miners inches is 39.2 inches. Under this calculation, Three Creeks would retain 15/67 of the Right 917 water, or 10.8 miners inches. The same ratio would apply to determining Right 918 water allocation.

¶31 The Kruers counter that the District Court correctly applied the *Spaeth* formula under these circumstances. They maintain that to have based the calculation on 67 acres rather than the irrigable acreage contained in Lot 11V-2 and the Commons Area, i.e., 18.28, would have been to ignore the 80/20 division established in the purchase agreement. In other words, under the purchase agreement, they were the undisputed

13

owners of 80% of the water rights of each decree. As such, only 20% of the remaining water rights were at issue at the settlement conference; thus only 20% of the water rights were subject to apportionment in the transfer of Lot 11V-2. Moreover, because the only irrigable land to which Three Creeks' 20% rights could apply were Lot 11V-2 and the Commons Area, it was appropriate to calculate allocation based exclusively on the acreage in these two parcels.

¶32     Having determined that the District Court had the jurisdiction and supporting evidence to award 100% of Right 917 to the Kruers, we need only address this argument as it applies to Right 918. The District Court applied an "irrigable acreage" method to allocate water from Right 918 but used only the acreage contained in Lot 11V-2 and the Commons Area. After the survey established that Lot 11V-2 contained 10.7 acres and the Commons Area contained 7.58 acres, for a total of 18.28 acres, the District Court determined that the Kruers owned 58.5 percent of these acres (10.7/18.28) and Three Creeks owned 41.5 percent (7.58/18.28). The court, looking solely at the .51 c.f.s. of water from Right 918 that had *not* been sold to the Kruers in 2000, determined that the Kruers were entitled to 58.5 percent of that .51 c.f.s., or .30 c.f.s.

¶33     While Three Creeks alleges this was an erroneous method of calculating the parties' shares of irrigable land because it did not take into account the total acreage, we agree with the District Court's conclusion that to include the entire 67 acres defined in Right 918 would be to ignore that 80% of Right 918 had already been sold to the Kruers. We are not persuaded by Three Creeks' argument that the District Court's error "arose from its erroneous views of the 'previous apportionment' of 80% water rights that were

14

purportedly transferred with [Lots 20V and 21V]," and that the transfer of the 80% rights was contested in the underlying litigation. While this may be true, at the time the Settlement Agreement was executed, this issue was resolved, with Three Creeks bargaining away its right to claim that the 80% water rights transfer was based on fraud or did not occur.

¶34 Therefore, we conclude the court did not err in adjusting the *Spaeth* formula to meet the specific and unique circumstances of this case.

¶35 *Issue Two: Did the District Court incorrectly interpret the Memorandum of Negotiated Settlement Terms (Settlement Agreement) executed by the parties following mediation?*

¶36 Three Creeks next urges us to conclude that the District Court's apportionment violates the express provisions of the Settlement Agreement that transfer of rights appurtenant to Lot 11V-2 not "affect[] any other [Three Creeks'] irrigation or water rights." Three Creeks attempted to introduce extrinsic evidence at the hearing that the water rights under Right 917 affected their water flow to other creeks, ponds and marshes on their property. The court concluded that the language of the Settlement Agreement was "clear and unambiguous," and therefore Three Creeks could not introduce extrinsic evidence of other creek usage or irrigation rights not involving Wisconsin Creek that might be adversely affected by the loss of water from Right 917. The court also found that "[Three Creeks'] contention that having [the Kruers] use Right 917 the same way as used by both [the Kruers and Three Creeks] for at least the last several years would somehow affect other water rights of [Three Creeks] is not tenable. If other rights would

15

have been affected [Three Creeks] would not have been using Right 917 exclusively on [Lots 11V-2, 20V and 21V]."

¶37 The construction and interpretation of a contract is a question of law for the court to decide and one that we review for correctness. *Wyant v. Kenda*, 2004 MT 348, ¶ 10, 324 Mont. 342, ¶ 10, 102 P.3d 1260, ¶ 10. Likewise, whether extrinsic evidence is admissible is a question of law that we review for correctness. *Habets v. Swanson*, 2000 MT 367, ¶ 8, 303 Mont. 410, ¶ 8, 16 P.3d 1035, ¶ 8. We note that while the District Court relied on extrinsic evidence of historic use of Right 917 to establish appurtenance, it would not allow Three Creeks to present extrinsic evidence relating to how its other water rights may be adversely affected by the loss of Right 917. The District Court also relied on the extrinsic historic use evidence to conclude that Three Creeks could not establish that loss of such water would affect its other irrigation rights. While this seems an inconsistent ruling on the use of extrinsic evidence, Three Creeks does not argue on appeal that the District Court erred as a matter of law by denying it the opportunity to present extrinsic evidence on this issue. Rather, it simply argues that the District Court's apportionment violated the express provisions of the Settlement Agreement that Three Creeks' irrigation or water rights not be affected. For the reasons set forth above under Issue One, however, we reject this contention. Therefore, we decline to disturb the District Court's ruling on this issue.

¶38 *Issue Three: Did the District Court incorrectly award attorney's fees and costs to the Kruers?*

16

¶39 Three Creeks first argues that the District Court erred in holding that the Kruers were the "prevailing" parties. It maintains that unless the Kruers "received all they prayed for," they were not the prevailing party under Montana law. Three Creeks asserts that the Kruers demanded 100% of Three Creeks' 20% of Right 918 or, alternatively, 63% of Three Creeks' 20%. However, they argue, because the District Court granted them only 58.5% of Three Creeks' 20% rights, Kruers did not prevail and, as such, the Kruers are not entitled to attorney's fees.

¶40 The Kruers respond by detailing their efforts to negotiate a resolution of the Settlement Agreement dispute in a manner that did not involve the court or result in additional legal costs and expenses. They note that they initially offered to allow Three Creeks to retain 40% of Three Creeks' 20% to *both* Rights 917 and 918 but Three Creeks rejected the offer. The District Court ultimately gave all of Three Creeks' 20% to Right 917 to the Kruers, and 58.5% of Three Creeks' 20% to Right 918 to them. This final allocation resulted in Three Creeks having no rights under Right 917 and only 8.3% of the total rights under Right 918. The Kruers maintain that their original offer to Three Creeks allowing it to retain 40% of the 20% Three Creeks owned after the sale was based on a rough estimate of irrigable acreage of Lot 11V-2 and the Commons Area, and that this rough estimate had a margin of error of 5-10%. They assert, therefore, that Three Creeks' 41.5% is well within the margin of error of their estimate and represents what they had offered Three Creeks. As a result, they prevailed on this issue by receiving the percentage of Right 918 they had initially requested.

¶41 The District Court acknowledged the Kruers' attempts to resolve this issue and Three Creeks' rejection of their offer. The court also found that Three Creeks was unwilling to resolve the division of water under Rights 917 and 918 in accordance with Montana law, and its unwillingness resulted in court involvement. The District Court found that, based upon the survey, Three Creeks would retain 41.5% of its 20% of Right 918 and that the 1.5% between what the Kruers offered and what Three Creeks ultimately received was "hardly even a trickle of water."

¶42 The District Court's factual findings pertaining to this issue are supported by the record. Additionally, its conclusion of law based on these findings is not incorrect. The cases relied upon by Three Creeks are distinguishable in large part by the degree of success or failure of the parties in those cases. In the case before us, the difference between what the Kruers offered and what they received was approximately .305 miners inches. While Three Creeks characterizes this amount of water as "its livelihood," we conclude that it is insufficient to render the District Court's decision to award attorney's fees reversible error.

¶43 Three Creeks also argues that the Kruers' attorney's fees were insufficiently detailed, and therefore it was impossible to determine if the fees charged were "reasonable and necessary." Three Creeks criticizes the attorney's use of "block billing" in which two or three tasks are included in a single time entry. It maintains that the District Court's acceptance of such billing statements and its award of fees to the Kruers were improper.

¶44 The Kruers assert that their attorney's billing statements and the testimony presented at the hearing on fees adequately informed Three Creeks of the nature of the hours being claimed and was sufficient for Three Creeks to understand the substance of the claims. They noted that Three Creeks did not object to the number of hours claimed by their attorney or to his billing rate. They also argue that Three Creeks availed itself of the opportunity to cross-examine their attorney on his fees.

¶45 The District Court carefully reviewed the billing statements of the Kruers' attorney and declined, with adequate explanation, to award fees for several entries. For the remaining entries, it applied the factors set forth in *Plath v. Schonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, ¶ 36, 64 P.3d 984, ¶ 36. In *Plath*, we provided the following guidelines for courts to consider in determining the reasonableness of attorney fees:

(1)    the amount and character of the services rendered;
(2)    the labor, time and trouble involved;
(3)    the character and importance of the litigation in which the services were rendered;
(4)    the amount of money or the value of the property to be affected;
(5)    the professional skill and experience called for;
(6)    the attorneys' character and standing in their profession; and
(7)    the results secured by the services of the attorneys.

¶46 The District Court observed that Three Creeks had conceded that the Kruers had met factors (5) and (6), and therefore the court did not address those factors with any specificity. The District Court heard testimony from the Kruers' attorney as well as expert testimony on the amount and character of the services rendered and the labor, time and trouble involved. It noted that water rights are extremely important and are frequently the core of disputes in Montana. The court also opined that the litigation was

of extreme importance to both parties in this matter, justifying significant work being performed by their attorneys. The District Court further concluded that the Kruers' attorney had secured a valuable result for the Kruers. Based on these conclusions and the court's observation that there is no law prohibiting "block billing" by attorneys, the District Court determined that the Kruers' attorney's fees statements were sufficiently detailed and reasonable. We agree and hold that the District Court did not abuse its discretion in awarding fees to the Kruers.

## CONCLUSION

¶47 For the foregoing reasons, we affirm the District Court's rulings.


/S/ PATRICIA COTTER


We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS