DA 25-0225

FILED

02/10/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0225

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2026 MT 16

IN THE MATTER OF THE PETITION FOR
WATER COMMISSIONER TO MEASURE
AND DISTRIBUTE WATER ON BEAVER
CREEK WITHIN BASIN 41I, PURSUANT
TO THE PRIOR DECREE ENTERED IN

SPOKANE RANCH & WATER CO.

     v.

C. W. DODGE and WESLEY BEATTY.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Broadwater, Cause No. BDV 1882-208
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

    For Appellants Pole Creek Ranch LLC and Staubach Creek Ranch LLC:

    John E. Bloomquist, Betsy R. Story, Parsons Behle & Latimer, Helena, Montana

    For Appellees CX Ranch, LLP, Darrell E. Baum, Douglas B. Baum, and Irvin G. Riis:

    Ryan P. McLane, William P. Driscoll, Franz & Driscoll, PLLP, Helena, Montana

                  Submitted on Briefs:  January 7, 2026

                        Decided:  February 10, 2026

Filed:

_____
            Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Appellants Pole Creek Ranch LLC and Staubach Creek Ranch LLC, owned and operated by Jeff and Marie Hoeffner (Hoeffner), appeal the February 2025 order of the Broadwater County District Court denying Hoeffner's dissatisfied water user complaint and affirming the court-appointed Water Commissioner's distribution of Beaver Creek water. Appellees are CX Ranch LLP (CX Ranch), Darrell E. Baum and Douglas B. Baum (Baum), and Irvin G. Riis (Riis). We address the following restated issues:

1. *Was the Water Commissioner required to administer Beaver Creek water pursuant to the 2018 Amended Stipulation and Agreement, as incorporated in the 2018 Water Court order and 2022 Preliminary Decree for Basin 41I?*

2. *Did the District Court erroneously dismiss Hoeffner's dissatisfied water user complaint and affirm the Water Commissioner's Beaver Creek water distribution?*

We hold that the Water Commissioner was required to administer the subject water rights pursuant to the governing 2022 Preliminary Decree for Basin 41I, which incorporated the 2018 Water Court order, and that the District Court failed to determine whether the Water Commissioner's distribution practices comported with that decree. We therefore reverse and remand for further proceedings on Hoeffner's dissatisfied water user complaint pursuant to this Opinion.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 All parties here own water rights derived from a 1906 decree of 1000 miner's inches of Beaver Creek water to the Spokane Ranch & Water Company with a priority date of August 1, 1866. Prior to 1973, the 1000-miner's-inches water right was fractioned between

2

three parties: Hoeffner's predecessor in interest, Charles Masolo, owned 100 miner's inches (water right no. 41I 2747); Appellees' predecessor in interest, Olive McMaster, owned 834 miner's inches; and a third party not relevant to this appeal owned the remainder.

¶3    In June 1973, McMaster conveyed 300 miner's inches of her water right to three parties equally: CX Ranch's predecessor in interest, James Cox and Lillias Schmidt (Cox); Baum; and Riis. CX Ranch receives its 100 miner's inches through the George-Cox Ditch (water right no. 41I 370); Baum receives his 100 miner's inches through the Baum Ditch (water right no. 41I 6480); and Riis receives his 100 miner's inches through the Riis Ditch (water right no. 41I 10379). McMaster's remaining 534 miner's inches is now owned by the Bureau of Land Management (BLM) (water right no. 41I 49534). Though all are of coequal priority, Appellees' and Hoeffner's water rights derive from independent chains of title—CX Ranch's, Baum's, and Riis' rights being created by McMaster's 1973 conveyance.

¶4    The 1973 conveyance creating these three water rights contained an express condition governing distribution during times of water shortage, providing, as pertinent, that:

> Olive J. McMaster . . . is the owner of 834 miner's inches of that certain water right of the waters of Beaver Creek decreed to the Spokane Ranch & Water Company with a priority date of August, 1866, as set forth and referred to in [the 1906 decree]. . . . [She] desires to transfer, convey, and set over to [Cox, Baum, and Riis] 300 miner's inches of [her] water right . . . subject, however, to the restrictions hereinafter . . . set forth. . . . THIS transfer and conveyance of said water right is subject to the following provisions and conditions:

3

1.  The said Transferees [Cox, Baum, and Riis] and Grantees [McMaster] agree that in the event there should not be sufficient water in Beaver Creek to fill all of said Spokane Ranch & Water Company's right hereinabove described that when said water right has available to it only 400 inches of the same, the entire 400 inches shall be diverted and delivered to [McMaster]. As to any portion of said water right which is in excess of 400 miner's inches but which is not sufficient to fully satisfy the 300 miner's inches conveyed to [Cox, Baum, and Riis], in such event, [Cox, Baum, and Riis] shall share in such water in excess of 400 inches equally, share and share alike. . . .

2.  [Cox, Baum, and Riis] agree that the water above-mentioned and received by them will not be used to irrigate any ground other than that which is presently owned by them or contiguous to ground presently owned by them.

¶5     In December 2016, Cox (CX Ranch's predecessor in interest) and Baum filed a joint motion to amend the allowed periods of diversion and use for their respective water rights. Hoeffner objected on the grounds that Cox's and Baum's 100-miner's-inches-each water rights were, by operation of the 1973 conveyance, subordinate to the remaining portions of the originally-decreed 1000-miner's-inches water right and that a longer diversion period would adversely affect Hoeffner's water use.

¶6     Hoeffner, Cox, and Baum eventually reached a settlement agreement whereby Hoeffner would withdraw his objections in exchange for "informational remarks" being added to the post-decree abstracts for Cox's and Baum's water rights.[1] These informational remarks were:

---

[1] The operative decree for Basin 41I at that time was the Temporary Preliminary Decree for the Missouri River Above Holter Dam, issued March 8, 1995. See In the Water Court for the State of Montana Upper Missouri Division Missouri River Above Holter Dam Basin (41I) Preliminary Decree (June 22, 2022) (superseding and replacing the 1995 decree), available at https://dnrc.mt.gov/_docs/water/adjudication/41I-p_findings.pdf.

4

Distribution of Water Rights Nos. 41I 370-00[2] and 41I 6480-00[3] are subject to the terms of the June 15, 1973 Transfer and Conveyance of Water Right Agreement recorded at Book 17 of Miscellaneous, Pages 384-388, with the Broadwater County Clerk and Recorder.

The parties also agreed that Hoeffner's water right was not subject to the terms or limitations of the 1973 conveyance. The parties filed their 2018 "Amended Stipulation and Agreement" (2018 Stipulation) with the Water Court in February 2018.

¶7 In March 2018, the Water Court issued an order amending Cox's and Baum's period of use as decreed (2018 Water Court order). The court's order adopted and incorporated the parties' 2018 Stipulation and ordered amendments to Cox's and Baum's post-decree claim abstracts to include the stipulated "informational remarks" describing their respective water rights as "subject to" distribution pursuant to the terms of the 1973 conveyance. In June 2022, the Water Court issued a Preliminary Decree for Basin 41I, replacing and superseding the prior 1995 temporary preliminary decree,[4] which included those same distribution restrictions on CX Ranch's and Baum's post-decree abstracts for water rights nos. 41I 370 and 41I 6480, respectively (2022 Preliminary Decree for Basin 41I).

---

[2] CX Ranch's 100 miner's inches conveyed through the George-Cox Ditch.

[3] Baum's 100 miner's inches conveyed through the Baum Ditch.

[4] *See* In the Water Court for the State of Montana Upper Missouri Division Missouri River Above Holter Dam Basin (41I) Preliminary Decree (June 22, 2022) ("These Findings of Fact, Conclusions of Law, and abstracts define the nature and extent of each claimed existing water right under Montana law in Basin 41I and comprise a Preliminary Decree in accordance with § 85-2-231, MCA, and Rule 4, W. R. Adj. R.").

¶8      After first having been appointed for the 2022 irrigation season, Kylee Degen was appointed Water Commissioner for Beaver Creek for the 2024 irrigation season. That irrigation season, when water levels dropped, Water Commissioner Degen reduced Hoeffner's, CX Ranch's, Baum's, and Riis' water rights pro rata. She also changed the point of diversion for Riis' water right. According to Hoeffner, his ditch is upstream of Baum's ditch, which is upstream of Riis' ditch. Riis' point of diversion is below a summertime "losing reach" of Beaver Creek, and, historically, it becomes "futile" at some point to maintain sufficient water instream to reach the ditch. To ensure delivery of Riis' water right, the Water Commissioner reduced Hoeffner's 100-inches right to maintain water instream and then diverted the Riis water right through the Baum ditch. Hoeffner said this "stacking" practice doubled the water in Baum's ditch and gave Riis the unfair benefit of a diversion upstream from the losing reach. In other words, Degen reduced Hoeffner's right to deliver Riis water he otherwise would not receive. Hoeffner also said that Water Commissioner Degen, Baum's granddaughter, was working at the Baum Ranch, which was leasing and irrigating the Riis Ranch at the time.

¶9      In July 2024, Hoeffner sent a letter to Water Commissioner Degen complaining that her distribution practices during times of shortage in the 2024 irrigation season were contrary to the 2018 Water Court order, which incorporated the 2018 Stipulation and abstract amendments stating that CX Ranch's (formerly Cox) and Baum's water rights were subject to restrictions outlined in the 1973 conveyance. Hoeffner also complained that Degen's distribution and management practices were contrary to historical use. The

6

District Court, construing Hoeffner's letter as a dissatisfied water user complaint under § 85-5-301, MCA, ordered briefing. No party requested an evidentiary hearing.

¶10 In February 2025, the court denied Hoeffner's dissatisfied water user complaint and affirmed the Water Commissioner's 2024 irrigation season distribution practices. The court construed the 1973 conveyance to require CX Ranch, Baum, and Riis to "reduce their diversions" if McMaster/BLM "was unable to divert at least 400 miner's inches of her 534 miner's inches." But the District Court concluded that only the parties to the 1973 conveyance could exercise the restrictive covenant and that Hoeffner lacked standing to enforce its distribution provisions because he was not a party or a third-party beneficiary to it. The court was unwilling to consider Hoeffner's affidavits establishing historical use and water commissioner practice, limiting its review strictly to the four corners of the 1973 conveyance. Further, the court rejected Hoeffner's claim that the 2018 Stipulation gave him standing to enforce the 1973 conveyance, reasoning that the Water Court had not formally adjudicated the conveyance in the 2018 Water Court order. Finally, the District Court concluded that, in times of shortage, Hoeffner's water right—of coequal priority with CX Ranch's, Baum's, and Riis' rights—was subject to pro rata reduction and that diverting Riis' water down the Baum ditch was an appropriate management tool. Hoeffner timely appeals.

## STANDARD OF REVIEW

¶11 A dissatisfied water user proceeding under § 85-5-301, MCA, is a summary enforcement action addressing whether a water commissioner is properly distributing water

in accordance with the governing decree. The district court's conclusions of law are reviewed for correctness, while its findings of fact are reviewed to determine whether they are supported by substantial credible evidence. *Little Big Warm Ranch, LLC v. Doll*, 2024 MT 3, ¶ 16, 415 Mont. 8, 541 P.3d 104; *Eldorado Coop. Canal Co. v. Hoge (Eldorado II)*, 2016 MT 145, ¶ 9, 383 Mont. 523, 373 P.3d 836.

¶12 To the extent contract interpretation is implicated, it presents a question of law reviewed for correctness. *Kruer v. Three Creeks Ranch of Wyo., L.L.C.*, 2008 MT 315, ¶ 37, 346 Mont. 66, 194 P.3d 634. Because this appeal turns on whether the Water Commissioner and the District Court applied the correct legal framework in administering the decree and court-approved stipulations, our review is confined to questions of law.

## DISCUSSION

¶13 District courts must supervise distribution of water among all appropriators, ensuring enforcement of Montana's "first in time, first in right" principle. Section 85-2-406(1), MCA. To fulfill its statutory duty, a district court may appoint a water commissioner to apportion and distribute water. Section 85-5-101, MCA. Water commissioners' authority is strictly derivative; their powers arise from statute, the governing decree, and any agreements or conditions incorporated into that decree. *Fellows v. Office of Water Comm'r*, 2012 MT 169, ¶ 16, 365 Mont. 540, 285 P.3d 448; *Quigley v. McIntosh*, 110 Mont. 495, 499-500, 507-11, 103 P.2d 1067, 1069, 1073-75 (1939).

¶14    Montana law requires a water commissioner to apportion and distribute to rights-holders "the waters to which they are entitled," "as fixed" in the governing decree or instrument, including any adjudicated changes in water rights.  Sections 85-5-101, -201(1), MCA.  The controlling decree may be a temporary preliminary, preliminary, or final decree issued pursuant to §§ 85-2-231, -234, and -248, MCA.  *See also* § 85-2-406(4), MCA ("a temporary preliminary decree or preliminary decree or a portion . . . [of either] as modified after objections and hearings is enforceable and administrable according to its terms"); § 85-2-227(1), MCA ("[f]or purposes of administering water rights, the provisions of a temporary preliminary decree or a preliminary decree, as modified after objections and hearings, supersede a claim of existing right until a final decree is issued").  A water commissioner has no independent equitable discretion to disregard controlling decree language or court-approved stipulations; instead, she must implement and enforce the decree as written.  *Quigley*, 110 Mont. at 500, 103 P.2d at 1069 (the governing decree "must be the yardstick by which the commissioner shall proceed" and "must likewise constitute the yardstick for the consideration of instructions given to him by the court"); *Baker Ditch Co. v. Eighteenth Jud. Dist. Ct.*, 251 Mont. 251, 254-56, 824 P.2d 260, 260 (1992).

¶15    A water user dissatisfied with a water commissioner's distribution practices who claims entitlement to more water than he is receiving may initiate a dissatisfied water user proceeding under § 85-5-301, MCA.  This proceeding is a summary enforcement action which exists to ensure faithful administration of adjudicated rights, not to re-litigate title,

priority, or private contractual remedies. *Eldorado II*, ¶¶ 15-16. Its "whole question" is whether the water commissioner is distributing water in accordance with the governing decree. *Eldorado II*, ¶ 15; *Fellows*, ¶ 16 (citing *Quigley*). When a commissioner acts outside the authority delegated by statute and decree, the action is legally infirm regardless of administrative convenience or perceived fairness. *See Baker Ditch*, 251 Mont. at 254-56, 824 P.2d at 260 (governing decree did not authorize water commissioner to deny or reduce a downstream junior water right "to avoid a cessation of instream flow").

¶16    *1. Was the Water Commissioner required to administer Beaver Creek water pursuant to the 2018 Amended Stipulation and Agreement, as incorporated in the 2018 Water Court order and 2022 Preliminary Decree for Basin 41I?*

¶17    Before turning to the District Court's decision on Hoeffner's dissatisfied water user complaint, we address the dispositive legal question in those proceedings: whether Water Commissioner Degen was administering Beaver Creek water pursuant to the governing decree. To answer that question, the court reviewing a § 85-5-301, MCA, enforcement claim must identify the applicable decree or instrument governing the water rights at issue.

¶18    In 2018, upon adjudicating diversion- and use-period changes to Cox/CX Ranch's and Baum's 1866 water rights, the Water Court issued its 2018 Water Court order, ordering amendments to the claims, including, pursuant to the parties' stipulated agreement, that "distribution" of Cox/CX Ranch's and Baum's water rights is "subject to the terms" of the 1973 conveyance. The subsequent 2022 Preliminary Decree for Basin 41I includes the same distribution restrictions on CX Ranch's and Baum's post-decree abstracts for water rights nos. 41I 370 and 41I 6480, respectively. By the time of the 2024 irrigation season,

10

the Water Court had not yet issued a final decree for Basin 41I, and the parties' 1866 rights were therefore subject to the 2022 Preliminary Decree for Basin 41I. The record does not indicate any objection to CX Ranch's or Baum's water rights under that decree. In 2024, at the District Court's request, the Water Court produced updated tabulations of existing water rights for the 2024 irrigation season which likewise included the distribution restrictions on CX Ranch's and Baum's water rights.[5] This information was available to Water Commissioner Degen for the 2024 irrigation season. Because Hoeffner's complaint arises under § 85-5-301, MCA, the significance of this adjudicatory history lies not in its chronology, but in how it defined the water rights the Water Commissioner was required to administer during the 2024 irrigation season.

¶19 Accordingly, for purposes of a dissatisfied water user proceeding under § 85-5-301, MCA, the inquiry is not a reconstruction of the basin's full adjudicatory history, but identification of the administrable elements governing distribution during the season or use-period under review. Here, the Water Court-ordered distribution remarks for CX Ranch's and Baum's claims were reflected in the tabulations produced for the 2024 irrigation season that the Water Commissioner used in administering Beaver Creek, which were, in turn, reflected in the 2022 Preliminary Decree for Basin 41I. Those adjudicated

---

[5] The Water Court's "Tabulation of Water Rights and Permits on Beaver Creek" indicates it was prepared pursuant to §§ 3-7-212, 85-2-406(4), and 85-5-101, MCA, in cause no. DV-1882-208 ("In the Matter of the Petition of Beaver Creek Basin Water Users to Enforce Water Court Decrees and Appoint Water Commissioner"). Attached to the tabulations is a table titled "E053 Beaver Creek Staubach Distribution Area Commissioner Remark Index" where water rights nos. 41I 370 (CX Ranch) and 41I 6480 (Baum) each indicate that "distribution . . . is subject to the terms of the June 15, 1973 Transfer and Conveyance of Water Right Agreement," as recorded with the Broadwater County Clerk and Recorder.

11

remarks therefore formed part of the operative distribution framework the Water Commissioner was required to apply.

¶20 The 2022 Preliminary Decree for Basin 41I is the controlling and enforceable decree for purposes of the 2024 irrigation season administration, and the Water Commissioner's authority was therefore constrained by it. *See, e.g.*, §§ 85-2-406(4), 85-2-227(1), MCA; *Eldorado II*, ¶¶ 13-17, 20-22 (temporary preliminary decree as modified after objection was the enforceable decree in § 85-5-301 proceedings). However, the preliminary decree abstracts reflect that only CX Ranch's and Baum's water rights—nos. 41I 370 and 41I 6480—are "subject to" distribution restrictions imposed by the 1973 conveyance. Riis was not a party to the 2018 proceedings adjudicating Cox/CX Ranch's and Baum's water diversion and use periods and the Water Court did not order the restrictive language amended to Riis' water right, no. 41I 10379. As such, Riis' right, as described in the 2022 Preliminary Decree for Basin 41I contains no similar restrictive language. Moreover, the 2022 Preliminary Decree for Basin 41I notes a 2023 objection by Hoeffner to Riis' water right under the decree, asserting that the same "informational remarks" added to CX Ranch's and Baum's rights pursuant to the 2018 Water Court order should also be added to Riis' water right because it was created through the same 1973 conveyance and subject to the same distribution restrictions. It is unclear how or whether Hoeffner's 2023 objection was eventually resolved. On remand, the District Court must first ascertain whether the Water Court made any determination on Hoeffner's objection and, if so, what it determined. If the nature and extent of Riis' water right has not been determined, the

12

District Court must certify the matter of Riis' water right to the Water Court for immediate adjudication pursuant to § 85-2-406(2)(b), MCA.

¶21 We hold that the controlling decree in Hoeffner's dissatisfied water user complaint is the 2022 Preliminary Decree for Basin 41I, which incorporates the 2018 Water Court order's adjudicated amendments to CX Ranch's and Baum's water rights, as described on their respective post-decree abstracts. Pursuant to §§ 85-5-101 and -201(1), MCA, Water Commissioner Degen was duty-bound to apportion and distribute Beaver Creek water to the parties here pursuant to that governing instrument, including the adjudicated amendments incorporated therein.

¶22 *2. Did the District Court erroneously dismiss Hoeffner's dissatisfied water user complaint and affirm the Water Commissioner's Beaver Creek water distribution?*

¶23 Recognizing that the "whole question" in a § 85-5-301, MCA, proceeding is whether the water commissioner followed the controlling decree, this appeal ultimately turns on whether the District Court correctly framed and resolved Hoeffner's dissatisfied water user complaint pursuant to that principle. We hold that it did not.

¶24 Hoeffner argued that Water Commissioner Degen was required under the 1973 conveyance to reduce CX Ranch's, Baum's, and Riis' water rights pro rata in times of shortage—not his 100 miner's inches derived from a separate chain of title and not created through the 1973 conveyance. Hoeffner further argues that Water Commissioner Degen could not "stack" the Baum and Riis rights through the Baum ditch to circumvent a historical "losing reach" of Beaver Creek above Riis' point of diversion—in other words,

reduce Hoeffner's water right to ensure Riis a quantity of water he otherwise would not receive due to the nature of his right. Despite the water-right-enforcement nature of Hoeffner's complaint, the District Court narrowly characterized his claim as one of contract enforcement, not water right administration. This mischaracterization turned the court from the pertinent legal inquiry—whether the Water Commissioner was administering water pursuant to the controlling decree—to whether Hoeffner had standing to enforce the terms of the 1973 conveyance.

¶25    First, the District Court's characterization of Hoeffner's complaint as a contract enforcement claim was incorrect. A dissatisfied water user complaint under § 85-5-301, MCA, does not seek contractual remedies or adjudication of private rights under a conveyance. Hoeffner was seeking enforcement of his water right in accord with the controlling distribution restrictions created by the 1973 conveyance and subsequently incorporated into the 2018 Stipulation, 2018 Water Court order, 2022 Preliminary Decree for Basin 41I, and 2024 Water Court tabulations of water rights on Beaver Creek. He was not seeking to enforce the 1973 conveyance as a party to that contract. That the governing decree incorporated distribution-limiting language derived from a prior conveyance does not transform this proceeding into an action to enforce that conveyance but instead defines the distribution parameters the Water Commissioner is statutorily obligated to apply under § 85-5-301, MCA.

¶26    Second, a dissatisfied water user complaint under § 85-5-301, MCA, does not require the complaining water user to establish third-party beneficiary status. Contract-law

14

standing principles do not define who may invoke judicial supervision of decree-based water administration. Instead, § 85-5-301, MCA, grants standing to any "person owning or using any of the waters of the stream or ditch" dissatisfied with water commissioner management of those waters. Cases such as *Castillo v. Kunneman*, 197 Mont. 190, 642 P.2d 1019 (1982), on which Appellees rely address deed construction when courts are asked to resolve ownership or enforce private covenants. They do not control a decree-enforcement proceeding where the Water Court has already imposed adjudicated distribution conditions on specific claims and a water commissioner's compliance with those conditions is at issue, as is the case here. As an owner and user of Beaver Creek water, Hoeffner was authorized under § 85-5-301, MCA, to seek judicial enforcement of decree-compliant distribution of his right.

¶27 Further, the District Court rejected the 2018 Stipulation as having any controlling effect on water distribution because the Water Court never formally adjudicated the water rights conveyed by McMaster to Appellees in 1973. And, limiting its analysis to the four corners of the 1973 conveyance and 2018 Stipulation, the court rejected Hoeffner's "extrinsic" evidence, including affidavits establishing that Water Commissioner Degen's administration of Beaver Creek water rights since appointment in 2022 diverged substantially from historical use and distribution practices of prior water commissioners. Then, without identifying the controlling decree, the court affirmed the Water Commissioner's distribution practices based solely on the facts that Hoeffner's, CX

15

Ranch's, Baum's, and Riis' water rights were of coequal priority and "stacking" Baum's and Riis' rights was a permissible water management tool to deliver Riis' water.

¶28 The court's conclusion that the Water Court did not formally adjudicate the 1973 conveyance is analytically too narrow. While the Water Court did not specifically construe the conveyance, it adjudicated its effect on distribution of Hoeffner's, Cox/CX Ranch's, and Baum's water rights by approving the parties' 2018 Stipulation and ordering amendment of Cox/CX Ranch's and Baum's water rights to reflect restrictions created in the 1973 conveyance. Those amendments were subsequently incorporated into the 2022 Preliminary Decree for Basin 41I and were enforceable as described unless subsequently modified after adjudication upon timely objection. A stipulation approved by a court and incorporated into a decree is binding on the parties and on court officers charged with administering the decree. *See, e.g.*, *Teton Coop Canal Co. v. Teton Coop Reservoir Co.*, 2018 MT 20, ¶¶ 9-11, 14-25, 390 Mont. 210, 412 P.3d 1 (affirming Water Court's volume assignments for historic rights where its decree was based in part on parties' stipulation regarding quantity of water used; stipulation included informational language to appear on the claim abstract). Once adopted, such limitations cease to function merely as private covenants; they become operative elements of decreed water rights. To treat the claim abstracts' remarks as unenforceable unless a complaining party can satisfy contract-law standing requirements undermines their purpose and disregards their legal effect.

¶29 Finally, nothing in *Little Big Warm Ranch* established a free-standing rule that coequal priority rights must always be reduced pro rata during shortage; rather, such a

16

distribution is permissible only where consistent with the governing decree. In *Little Big Warm Ranch*, we approved percentage-based apportionment during times of low flow, rather than numerical flow rates as decreed, because the water source could not provide the entire flow rate allocated to each right-holder under the decree and claim abstracts. Pursuant to § 85-2-406(2)(b), MCA (certifying "water distribution controversy" to water court judge for immediate adjudication), the Water Court had previously adjudicated the percentage-based shares the district court and water commissioner employed. Therefore, an adjudicated decree and subsequent amendments expressly authorized the pro rata distribution and diversion practices used. *Little Big Warm Ranch*, ¶¶ 21-32; *compare Baker Ditch*, 251 Mont. at 254-56, 824 P.2d at 260 (reducing or denying a water right to maintain instream flow despite stream recharge was not authorized under controlling decree).

¶30     The same is true for water "management tools"—they may be employed only if not contrary to rights under the controlling decree. *See Eldorado Co-Op Canal Co. v. Lower Teton Joint Objectors (Eldorado I)*, 2014 MT 272, 376 Mont. 420, 337 P.3d 74. Whether a particular management practice is permissible must therefore be measured first against the decree itself, which remains the "yardstick" by which a water commissioner's authority is judged. *Quigley*, 110 Mont. at 500, 103 P.2d at 1069. Where a decree or claim abstract identifies a specific point of diversion, delivery of that right through an alternative diversion may not be justified solely by administrative efficiency or the absence of proven injury, absent adjudicated authorization or modification. *See Eldorado I*, ¶¶ 8-20, 23-33,

17

35-36 (district court and water commissioner authorized to divert water for certain rights-holders around a losing portion of a Teton River channel where Water Court determined that the diversion practice was a permissible historic conservation measure on that water source).

¶31   Here, the District Court failed to apply these decree-first principles.   The court approved Water Commissioner Degen's pro rata reductions and "stacking" practices without first determining whether those practices complied with the governing decree. By doing so, the court applied an incorrect legal framework for proper review of a water user complaint under § 85-5-301, MCA.   The error concerns the scope of authority, not the factual accuracy of any particular calculation or the ultimate merits of any distribution decision.   Because the District Court failed to ensure decree-compliant administration, reversal is required.

## CONCLUSION

¶32   A water commissioner's authority is strictly derivative and must be exercised in conformity with the governing decree and its adjudicated terms—here, the 2022 Preliminary Decree for Basin 41I, including the adjudicated claim-abstract amendments incorporated from the 2018 Water Court order.   Because the District Court approved water administration without first ensuring that the Water Commissioner's actions complied with the governing decree for Basin 41I, we reverse.

¶33   On remand, the District Court must first determine whether the Water Commissioner's distribution and management practices conform to the governing decree.

18

This may require the court to certify the question of Riis' water right to the Water Court pursuant to § 85-2-406(2)(b), MCA, before determining whether the Water Commissioner correctly administered that water right. Administrative convenience or efficiency may not substitute for compliance with adjudicated rights and limitations. We limit this Opinion to the legal framework governing review of a dissatisfied water user complaint and do not determine whether any particular reduction, allocation, delivery practice, or management practice complies with the decree. The District Court must make those determinations on remand after applying a decree-first analysis consistent with § 85-5-301, MCA, and Montana precedent.

¶34    Reversed and remanded.


                                        /S/ KATHERINE M. BIDEGARAY


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON